Plaintiff, Florence A. Thiel, seeks recovery for personal injuries, loss of earnings and expenses resulting from an accident caused by defective steps of an apartment building, a portion of which she occupied as her residence. Miss Thiel, with her mother and cousin, occupied under a written contract of lease which had been executed by her brother Walter E. Thiel with defendants, one of the two upper apartments in a building which contained four apartments, plaintiff's apartment bearing the No. 809 1/2 Exposition Boulevard. William E. Kern, who is one of the defendants, and his wife, occupied the adjoining upper apartment, No. 811 1/2 Exposition Boulevard.
It is averred that on November 20, 1945, at 7:15 o'clock, a.m., while plaintiff was descending the front stairway, she was injured when one of the planks broke causing her to fall a distance of about ten feet to the sidewalk below; she charges that the step which broke was defective either because of a vice and defect in the original construction, or because of the failure of defendants to keep same in a proper state of repair. She claims the sum of $7,263.80. It is alleged that the building was owned by William E. Kern and his three sisters, all of whom are defendants.
Exceptions of vagueness and no cause of action were filed by the defendants. The exception of vagueness was maintained and plaintiff amended the petition; the exception of no cause of action was overruled.
The defendants deny the alleged defectiveness of the steps. They make the further defence that by the lease contract the lessee agreed to maintain the premises in repair, and assumed responsibility for its condition, and that under Act No. 174 of 1932 there is no liability on their part to plaintiff. In the alternative they plead that; if they are adjudged guilty of negligence, they are nevertheless not liable, because of the contributory negligence on the part of plaintiff, who they alleged tripped and fell not as a result of the defect in the premises, but because of the high heels on her shoes.
Judgment was rendered in plaintiff's favor for $2,500 after a trial on the merits, from which this present appeal has been taken by defendants. Plaintiff made answer to the appeal, and prays that the amount of the judgment be increased to $5,000.
There is no dispute that plaintiff fell on the steps. There were introduced into evidence several photographs of the stairway in question, which show that from the upper apartments there is a first flight of 12 steps leading downward to a landing, and from each side of this landing there are 9 steps leading to the ground, which are at right angles to the first flight of steps. The stairway provides a means of ingress and egress to the occupants of both upper apartments.
On the alleged date plaintiff was descending the stairway and had negotiated the first flight of steps to the landing, which is located about six feet above the ground, and as she attempted to continue down the second flight of steps to her left, the end board of the landing gave way, precipitating her to the ground. Plaintiff's testimony regarding the fall is supported by that of her mother, Mrs. Alice E. Thiel, who was standing on the upper balcony and witnessed the accident. Plaintiff's cousin, Fannie Merry, who was walking alongside of her, also testified that the landing board broke and plaintiff immediately fell to the ground. The landing board split into fragments, and photographs which are part of the evidence show it was in a decayed condition.
The platform landing, soon after the accident, was repaired, and the carpenter testified that he inspected the piece of wood which broke off and that it showed evidence of termite infestation. Two other witnesses, one of whom was produced by defendants, testified that the broken plank *Page 298 
was subject to dry rot and had been eaten by termites.
There is disagreement between counsel as to whether plaintiff is to be considered a lessee of the premises, or as a licensee. It is averred in the petition that the lease "was executed by petitioner's brother in her behalf and in behalf of the other members of her family," and counsel for defendants argues that in view of that allegation the plaintiff was the actual lessee and cannot be placed in the category of a licensee, and that she was bound by all of the conditions and stipulations of the written lease. It is also disputed whether defendants had been notified or had knowledge of the defects existing in the steps.
[1] But we consider it a matter of no importance whether Miss Thiel is to be classified as the lessee or as a third person, or whether the landlords had or had not notice or knowledge of the defectiveness of the premises, for the law is well settled that the owner of property is liable to a tenant or to a third person rightfully on the premises, being without fault, injured as a result of an accident caused by defects in the building, whether the defects are latent or not. The liability to a tenant arises from the obligations placed upon the owner by Civ. Code, arts. 2692-2695, and as to a third person the liability springs from Civ. Code, arts. 670 or 2322, or both. Coleman v. Rein, La. App., 4 So.2d 622; Staes v. Terranova et al., La. App., 4 So.2d 453; Hughes et al., v. Abate, La. App.,2 So.2d 68; Morris v. Hava, La. App., 180 So, 216 Tesoro v. Abate, La. App., 173 So. 196 Heath v. Suburban Building and Loan Association et al., La. App., 163 So. 546; Hanover et al. v. Brady, La. App., 148 So. 267.
[2] In support of the plea of contributory negligence, defendants argue that the heels of plaintiff's shoes were 1 3/4 inches high, as measured in the trial court, and that one of her heels "turned and caught in the edge of the step" tearing off part of it and throwing her to the ground, and that the accident resulted directly from the high heels. There is no evidence in the record supporting this theory of defendants, and we are convinced that plaintiff's fall can be accredited solely to the rotten condition of the edge board of the stairway landing.
Under the facts as proven on the trial of this case, the law clearly warrants a recovery by plaintiff, unless the defendants can maintain their special plea of non-liability because of the contractual stipulations contained in the lease.
The lease under which plaintiff occupied the upper apartment had been entered into by her brother, Walter E. Thiel, with defendants, and contained in the lease are the following provisions:
"Except as otherwise specified in this lease in writing, the premises and appurtenances, including locks, keys and all fixtures, are accepted by the Lessee in their present condition and are to be maintained by Lessee during the term of the lease in like order as received. * * *
* * * No repairs shall be due to Lessee except such as may be needed to the roof, or rendered necessary by fire or other casualty, not occasioned by Lessee's fault or negligence.
The Lessor shall not be liable for any damage either to persons or property, sustained by the Lessee or his agents, clerks, servants or visitors, or his agents, clerks, other persons. This provision shall apply especially (but not exclusively) to damage caused by termites, leaks in the roof, water, snow, frost, steam, sewerage, electricity, illuminating gas, sewer gas or odors, or by the bursting or leaking of pipes or plumbing work, and whether such damage be caused or occasioned by any thing or circumstance above mentioned or referred to, or by any vice or defect or failure to repair the leased premises, or any portion thereof, or by any other thing or circumstance whether of a like or a wholly different nature. * * *"
Defendants' counsel has reurged the exception of no cause of action before us, and contends that in view of the quoted provisions of the lease, which is made part of the petition, defendants are absolved from all liability, under the provisions of Act No. 174 of 1932, Sec. 1 of which provides as follows: "* * * the owners of buildings or premises which have *Page 299 
been leased under a contract whereby the tenant or occupant assumes responsibility for the condition of the premises shall not be liable in damages for injury caused by any vice or defect therein to any tenant or occupant, nor to anyone in the building or on the premises by license of the tenant or occupant, unless the owner knew of such vice or defect, or should within reason have known thereof, or had received notice of such vice or defect and failed to remedy same within a reasonable time thereafter."
We will consider the exception along with the special defense made by defendants. As a special defense they set forth in their answer that under the act they cannot be held liable for any damages suffered by plaintiff. This court, in the case of Estes v. Aetna Casualty Surety Company et al., La. App., 157 So. 395, 398, had occasion to pass upon the liability of a landlord for an accident which occurred in a courtyard used in common by several tenants. We discussed there the difference between the common law and the Louisiana law insofar as the responsibility of landlords for damages caused by defective premises is concerned. The following expressions are found in the opinion:
"This civil law principle, that the lessor is responsible for damage caused by defects in his property, is the reverse of that which exists in practically all common-law jurisdictions. In the Zenoria Lumber Company Case [Lasyone v. Zenoria Lumber Co., 163 La. 185, 111 So. 670] our Supreme Court also said: '* * * It is sufficient to say that under the civil law the rights of landlord and tenant are radically different from what they are under the common law.'
"This difference is interesting for the reason that, even under the other systems, under which the rule is that the tenant takes the leased premises subject to its defects, there is a recognized exception in the case of those parts of the lessor's property used in common by different tenants, or used in common by the tenant and the lessor himself. In 25 A.L.R. 1273, there appears an editor's note to the case of Roman v. King, 289 Mo. 641, 233 S.W. 161 [25 A.L.R. 1263], in which are cited nearly 200 cases from many jurisdictions, all recognizing this exception to the common-law rule. In the words of the note: 'To the rule that a tenant takes the leased premises subject to defects not amounting to a trap, there is an exception to the effect that the owner of a building who leases it to different tenants, and expressly or impliedly reserves portions thereof, such as halls, stairways, porches, walks, etc., for the use in common of different tenants, is liable for any personal injury to a tenant, or a person in privity with a tenant, due to defects in the portion of the leased premises of which the landlord so retains control, provided the defect is ascribable to the negligence of the landlord, and the tenant or person injured is not guilty of contributory negligence.'
"In a most recent treatise on the subject, American Law Institute's Restatement of the Law of Torts, vol. 2, p. 976, § 360, the principle is thus stated: 'A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, * * *.' "
[3] Under Act No. 174, 1932, when a tenant assumes responsibility for the condition of the premises, and the lease stipulates that the landlord will not be responsible for damages caused by the defectiveness thereof, the landlord is exonerated, and liability for injuries to third persons resulting from a defect in the premises attaches to the tenant. See Terrenova v. Feldner et al., La. App., 28 So.2d 287.
[4] A tenant under our law, leasing property by a contract containing the stipulations and conditions contemplated by the 1932 statute, is placed, quoad responsibility for damages caused by defects in the leased premises, in a situation analogous to that occupied by a tenant in a common-law jurisdiction. The tenant shoulders responsibility for damages sustained by third persons *Page 300 
or their property in the leased premises resulting from vices existing therein.
As we pointed out in Estes v. Aetna Casualty Surety Company, supra, under the common-law rule this responsibility does not rest with the lessee when those lawfully upon the property are injured because of a vice existing in a part of the premises which the landlord retains in his possession, and which the lessee is entitled to use only as an appurtenance of that part of the property which is leased to him.
[5] Applying that rule in the instant case, we are led to the conclusion that the defendants here are not relieved from liability to Miss Thiel for her damages because of the stipulations contained in the written lease. Walter E. Thiel, the lessee, and the members of the Thiel family, had no control or supervision of the wooden stairway used in common with one of the defendants and the members of his family, and the stairway did not constitute a part of the property leased, in the sense that the tenant was given possession thereof. The stairway being one used in common by all occupants of the upper apartments, the lessors necessarily retained domination and control of it, and it would be absurd to say that under those circumstances the parties contemplated that the provisions of the lease bound the lessee to make repairs and rendered defendants harmless for damages to a third person lawfully using the stairway injured as a result of a vice or defect therein.
Plaintiff's injuries consisted of a fracture of the left elbow, bruises to the knees and left hip, a "hicky" on her head, and two black eyes. She was knocked unconscious, and remained in bed for the rest of the day of the accident and part of the two following days. She was examined by Dr. M.L. Michel in the emergency room of the Touro Infirmary, and X-rays disclosed the fracture of the left elbow. According to Dr. Michel "the bone was just cracked; there was no displacement of any broken fragments." A cast was applied and plaintiff's arm was immobilized for 7 or 8 weeks, which we understand from the physician is the usual time required for the healing of such an injury. After the cast had been removed, the arm gradually returned to normal mobility, and the doctor stated that there was nothing particularly unusual about the case during the period of treatment. His opinion was that there would be no permanent deformity.
Shortly before the trial in the court below, plaintiff returned to Dr. Michel and complained of pains in the region of the left elbow, radiating down the inner side of the arm toward the fingers. Dr. Michel took further X-rays which showed the fracture to be completely healed, and he stated that it is difficult to explain the type of pain which plaintiff complained of, as it is unusual for a fracture of that type to cause difficulty so long afterward. However, up until a week before the trial, injections had been made into the nerves of plaintiff's arm for this after-complaint.
Plaintiff testified that she was a clerical worker and did a great deal of typewriting, and that she lost in salary the sum of $213.21; however, at the time of the trial below she was working at a salary of $160 per month. Her medical and other expenses totalled $50.59.
[6] in the matter of assessing damages for personal injuries no standard exists and no rule obtains, and the amount of the award is peculiarly within the discretion of the trial court, whose judgment should not be disturbed except for serious error. However, there should be some uniformity in awards for this type of damage.
In the case of Bates v. Blitz et al., La. App., 13 So.2d 516, affirmed 205 La. 536, 17 So.2d 816, decided in 1944, a plaintiff was allowed $1,000 in addition to incurred expenses for a fracture of the upper third of the left humerus, together with contusions and brush-burns.
[7] In view of Dr. Michel's testimony that the fracture of plaintiff's arm is completely healed, and that there is no residual disability, the amount awarded by the lower court is excessive and should be reduced, and we believe the sum of $1,500, in addition to the loss of earnings and the expenses incurred, will adequately compensate plaintiff for her injuries.
For the reasons assigned, the judgment appealed from is amended so as to allow *Page 301 
plaintiff the sum of $1,763.80, and as thus amended, and in all other respects, the judgment appealed from is affirmed. Defendants-appellants are to pay all costs of this appeal.
Amended and affirmed.