484 So.2d 282 (1986)
Nick S. PARRINO, Plaintiff-Appellee,
v.
ROYAL INSURANCE COMPANY OF AMERICA, et al., Defendants-Appellants.
No. 84-1167.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
*283 Trimble & Associates, Elizabeth E. Foote, Alexandria, for defendants-appellants.
Gist, Methvin, etc., Dewitt T. Methvin, Alexandria, for intervenors-appellees.
Boatner & Luke, R.H. Luke, Bunkie, for plaintiff-appellee.
Before DOMENGEAUX, FORET and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether or not a provision of a written lease agreement releases the lessor and the lessor's insurer from liability for damages incurred by the lessee and his insurers as a result of a fire originating in the portion of the building, occupied by the lessor, which was adjacent and to the rear of the leased premises in the same building, and whether or not the jury instructions were so confusing and contradictory as to entitle the lessor and lessor's insurer to a reversal of the trial court judgment or alternatively to a new trial.
Nick S. Parrino (hereinafter referred to as plaintiff) filed suit against his lessor, The Haas Investment Company, Inc. (hereinafter referred to as Haas),[1] and its liability insurer, Royal Insurance Company of America (hereinafter referred to as Royal), seeking recovery for damages that he sustained as a result of a fire that started in the portion of the building, occupied by his lessor, which was adjacent and to the rear of the leased premises in the same building. Plaintiff's liability insurers, Hartford Fire Insurance Company and Lafayette Insurance Company (both hereinafter referred to as Intervenors) intervened in the suit, seeking reimbursement from defendants for amounts that they paid to plaintiff as a result of his loss caused by the fire. After a trial by jury, judgment was rendered in favor of plaintiff and Intervenors and against defendants. Defendants suspensively timely appeal. We affirm.

FACTS
Pursuant to a written contract of lease, plaintiff began leasing from Haas the front portion of the Haas Building which was located in Bunkie, Louisiana. Plaintiff conducted his business, a retail sporting goods store, in the leased premises, which constituted the front and major portion of the Haas Building, and which measured approximately 3,500 square feet. Haas did not lease to plaintiff the rear portion of the Haas Building, and maintained some of its offices therein. The front portion of the building was divided from the rear portion by a wall, but both portions of the Haas Building had a common roof and attic.
On February 10, 1983, at approximately 5:30 P.M., the entire Haas Building, including plaintiff's store in the front leased portion of the building, was destroyed by a fire. On August 11, 1983, plaintiff filed suit against defendants, Haas and Royal, seeking recovery for the damages that he sustained as a result of the fire. Intervenors joined in the suit to recover amounts that they had paid to plaintiff for *284 his losses pursuant to fire insurance policies that they had issued to plaintiff.
The case was tried before a jury. During the trial, no evidence was presented which might indicate that the fire was started on account of any negligence of Haas. However, there was no dispute that the fire started in that rear portion of the building occupied by Haas. Adaline Washington, a patrolman with the Bunkie Police Department, was one of the first persons who saw the fire. Washington testified that when he first started watching the Haas Building, he saw smoke coming out of the back portion of the Haas Building and that he did not see any smoke escape from the front part of the building leased by plaintiff. Additionally, Idal Guillot, an investigator with the State Fire Marshall's Office, testified that it was his opinion that the fire originated in the rear portion of the Haas Building occupied by Haas and that a possible cause of the fire was faulty electrical wiring. Defendants in brief and in oral argument on appeal do not deny that the fire started in the rear portion of the building occupied by Haas.
Pursuant to a jury verdict, a judgment was signed on October 15, 1984: (1) in favor of plaintiff and against defendants, Haas and Royal, in the sum of $70,691.00, together with legal interest thereon from date of judicial demand; (2) in favor of Intervenor, Hartford, and against defendants, Haas and Royal, in the sum of $55,849.00, together with legal interest thereon from date of judicial demand; and (3) in favor of Intervenor, Lafayette, and against defendants, Haas and Royal, in the sum of $4,000.00, together with legal interest thereon from date of judicial demand. The judgment also ordered the defendants to pay all costs of the proceeding.
Defendants have timely filed a suspensive appeal. In their appellate brief, defendants admit that the evidence presented at trial was such that reasonable minds could differ, and that the finding of the jury that the fire originated in that portion of the building occupied by Haas is not manifestly erroneous. Nevertheless, defendants allege the following specifications of error:
(1) The jury erred in failing to find that certain release language in the lease served to release the defendants from liability;
(2) The jury erred in failing to find that certain indemnity language in the lease entitles defendants to an offset against any amounts which plaintiffs may have been entitled to otherwise recover; and
(3) The jury instructions did not properly reflect the law applicable to the pleadings and facts in the case, and were confusing, misleading, and contradictory, entitling defendants to a reversal of the decision and entry of judgment in their favor, or alternatively, to a remand to the trial court for a new trial.

JURY INSTRUCTIONS
In their third specification of error, defendants contend that the jury instructions (1) did not properly reflect the law applicable to the pleadings and facts of the case; and (2) were confusing, misleading and contradictory, entitling them to a reversal of the decision at the trial court level and entry of a judgment in their favor, or alternatively, to a remand to the trial court for a new trial.
In their appellate brief, defendants acknowledge that the requested jury instructions, as submitted to the trial court by the parties, are not a part of the record. Consequently defendants attached to their brief copies of the jury instructions that they contend were submitted to the trial court and which they have requested that we refer to. As the jury instructions, copies of which are attached to defendants' brief, are not a part of the evidence in the record, this Court will not consider them on appeal.
Nevertheless, the jury instructions, as read by the trial judge to the jury, are a part of the record, and since defendants timely objected to certain portions of these instructions, the jury instructions which *285 were given and objected to may be examined by this court on appeal.
It is well settled that adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La.App. 3rd Cir.1985), writ den., 480 So.2d 738 (La. 1986); Oatis v. Catalytic, Inc., 433 So.2d 328 (La.App. 3rd Cir.1983), writs den., 441 So.2d 210, 215 (La.1983). In Laborde v. Velsicol Chemical Corp., supra, this court further discussed the adequacy and appellate review of jury instructions as follows:
"The adequacy of a jury instruction must be determined in light of the jury instructions as a whole.
If the court gives misleading, confusing instructions or omits an applicable essential legal principle, then such instructions do not adequately set forth the law and may constitute reversible error. The manifest error standard of appellate review may not be ignored unless the jury charges were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts.
The `... standard of appellate review is that the mere discovery of an error in the trial judge's instructions does not itself justify the appellate court conducting a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case.'" (Citations omitted.) Laborde v. Velsicol Chemical Corp., 474 So.2d 1320, at page 1324 (La.App. 3rd Cir.1985).
We have fully reviewed the jury instructions in the record which were given by the trial judge to the jury, to which objections were made, and we agree with defendants that there is a conflict between two of the instructions read to the jury. At one point in his instructions to the jury, the trial judge stated:
"It is contrary to public policy to allow a contractee to stipulate exemption from negligence of acts which cause injury. Public policy forbids a contract whereby an attempt is made to perspectively [sic] absolve a person of liability for injuries negligent of the cause through instrumentalties [sic] in the exclusive control of that person."
However, at another point, the trial judge told the jury that:
"You are further advised that under Louisiana law the parties may agree to release any claim even one of future liability except that they cannot release liability for future intentional wrongs. Where release language in an agreement is unequivacable [sic] and broad enough to cover any alleged negligence or breach of contract such release language will be given effect and enforced."
We find that the defendants' other objections to the trial judge's instructions to the jury are without merit.
When an appellate court has all the facts before it, a trial judge's erroneous instructions to the jury do not warrant a remand and the appellate court may decide the case on the merits de novo. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975); Fontenot v. Hanover Ins. Co., 473 So.2d 145 (La.App. 3rd Cir.1985); writs den., 475 So.2d 1109, 1110 (La.1985).
As previously mentioned, defendants do not appeal the finding of the jury that the fire started in that portion of the building occupied by Haas and then spread to that portion of the building leased to plaintiff. Defendants additionally do not appeal the amount of damages that the jury found were sustained by plaintiff. The findings of the jury that are appealed by defendants concern questions of law (i.e. the effect to be given certain provisions of the lease agreement between the parties). We have, as will be seen from our examinations of defendants' first and second specifications of error, reviewed this case de novo as to these questions of law.

RELEASE AGREEMENT
Paragraph VIII of the written lease agreement between plaintiff-lessee, Parrino, and defendant-lessor, Haas, provides:

*286 "VIII. LIABILITY FOR NEGLIGENCE. This agreement is made upon the express condition that Lessor shall be free from all liabilities and claims for damages and/or suits for or by reason of any injury or injuries to any persons or property of any kind whatsoever, whether the person or property of Lessee, its agents or employees, or third persons, from any cause or causes whatsoever while in or upon said premises or any part thereof during the term of this agreement, or any renewal thereof, or occasioned by any occupancy or use of said premises or any activity carried on by Lessee in connection therewith, and Lessee hereby covenants and agrees to indemnify and save harmless the Lessor from all liabilities, charges, expenses (including counsel fees) and costs on account of or by reason of any such injuries, liabilities, claims, suits or losses however occurring or damages growing out of same."
In their first specification of error, defendants contend that the jury erred in failing to find that this exculpatory language in the written lease agreement, specifically the language in Paragraph VIII of the lease, served to release defendants from liability for the damage sustained by plaintiff as a result of the fire. Plaintiff and Intervenors argue that Paragraph VIII of the lease does not release defendants from liability for the damage sustained by plaintiff.
Absent a contractual provision to the contrary, a lessor guarantees his lessee against all vices and defects of the thing leased. LSA-C.C. Art. 2695. Nevertheless, a lessee may contractually absolve a lessor from responsibility for the condition of the leased premises pursuant to LSA-R.S. 9:3221, which provides as follows:
"The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."
Since, as plaintiff and Intervenors contend, the fire started in the portion of the Haas Building occupied by Haas, a contention that the defendants do not deny on this appeal, LSA-C.C. Art. 2695 and LSA-R.S. 9:3221 are simply not relevant. Plaintiff and Intervenors do not claim that the portion of the Haas Building leased by plaintiff was defective. What plaintiff and Intervenors do claim is that the portion of the Haas Building occupied by Haas was defective, and that a defect in this portion of the building was the cause of the fire. Therefore, the following Louisiana Civil Code Articles are relevant in determining whether or not defendants are liable for the damage sustained by plaintiff.
LSA-C.C. Art. 660 provides:
"The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passerby. He is answerable for damages caused by his neglect to do so."
LSA-C.C. Art. 2322 provides:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
There are several cases that we find helpful in determining the liability of defendants. In the case of Thiel v. Kern, 34 So.2d 296 (La.App.Orl.1948), the plaintiff, who occupied one of two upper apartments in a building which contained four apartments, was injured when a plank of the stairway, which was used by the occupants of both upper apartments, broke as a result of an alleged vice or defect in the original construction, or as a result of an alleged failure of the lessors to keep the stairway in a proper state of repair. In the plaintiff's suit against the lessors, the lessors argued that the lessee assumed liability in their written lease for the condition of the stairway and that, under Act No. 174 of *287 1932,[2] and under a provision of the lease contract, they were not liable to plaintiff. The provision of the lease was quoted in relevant part by the appellate court as follows:
"`The Lessor shall not be liable for any damage either to persons or property, sustained by the Lessee or his agents, clerks, servants or visitors, invites, licensees, or by other persons. This provision shall apply especially (but not exclusively) to damage caused by termites, leaks in the roof, water, snow, frost, steam, sewerage, electricity, illuminating gas, sewer gas or odors, or by the bursting or leaking of pipes or plumbing work, and whether such damage be caused or occasioned by any thing or circumstance above mentioned or referred to, or by any vice or defect or failure to repair the leased premises, or any portion thereof, or by any other thing of circumstance whether of a like or a wholly different nature. * * *'" (Emphasis added.) Thiel v. Kern, 34 So.2d 296, at page 298 (La.App.Orl.1948).
The Orleans Court of Appeal held that this lease provision did not absolve the lessors from responsibility for the condition of the stairway, by stating that:
"The stairway being one used in common by all occupants of the upper apartments, the lessors necessarily retained domination and control of it, and it would be absurd to say that under those circumstances the parties contemplated that the provisions of the lease bound the lessee to make repairs and rendered defendants harmless for damages to a third person lawfully using the stairway injured as a result of a vice or defect therein." Thiel v. Kern, 34 So.2d 296, at page 300 (La.App.Orl.1948).
In Standard Office Supply Co. v. Stonewall Investment Co., 267 So.2d 768 (La. App. 2nd Cir.1972), the lessee, who occupied the ground floor premises, sued his lessor for the damages to his furniture, fixtures, and supplies which resulted from water leaking from a water cooling machine located on the second floor occupied by the lessor. The lessor, in denying his responsibility for the damage sustained by the lessee, relied on a provision of their lease contract which, as quoted in the opinion, provided as follows:
"`8. No repairs shall be due Lessee by Lessor except to the roof, and Lessor will not be responsible for damages caused by leaks or defects in the roof, except * * * * after having received written notice thereof from Lessee. Lessor shall not be liable for any damage to person or property sustained by Lessee or any other person, and Lessee shall hold Lessor harmless from any claims by or liability to third persons however arising * * * *.'"
The Second Circuit Court of Appeal noted that a contract provision as quoted above is effective to exempt a lessor from liability for damages resulting from the condition of the leased premises under the terms of LSA-R.S. 9:3221 but also stated that:
"[L]SA-R.S 9:3221 does not apply to damages incurred by lessee or third persons resulting from a defect in the property which is not part of the leased premises, and over which lessee has no supervision or control.
* * * * * *
However, we find that a ceiling serving as a partition between floors of a building is not defective as a matter of law because accumulated waters may leak through it. Therefore, the malfunctioning water cooler proximately caused plaintiff's damages...." Standard Office Supply Co. v. Stonewall Investment Co., 267 So.2d 768, at page 770 (La.App. 2nd Cir.1972).
In Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.1983), writ den., 445 So.2d 449 (La.1984), the tenants of a building (4217 Canal Street) sued their owner-lessor *288 and their owner-lessor's liability insurer for the damage that they sustained as a result of a fire that originated in a neighboring building (4219 Canal Street) which was also owned by their owner-lessor.[3] The Fourth Circuit Court of Appeal, in affirming the trial court judgment in favor of the tenants, stated the following:
"Where a plaintiff can establish that the fire started in property owned by the defendant, but not occupied by the plaintiff, the burden of proof shifts to the owner to exculpate himself. Keller v. Kelly, 378 So.2d 1006 (La.App. 4th Cir. 1979) writ denied 380 So.2d 624 (La.1980).
* * * * * *
[W]e find the case of Keller v. Kelly to be controlling because in that case the fire did not begin in the thing leased to the plaintiff, but began in one of several other apartments of which the defendant was the lessor, and the alleged fault of the lessor was based on faulty materials; a vice encompassed within the meaning of Civil Code Articles 660 and 2322.
Additionally, in the instant case, we find the relationship of the parties to be significant. Gauthier was the owner-lessor of the building in which the defect allegedly existed as well as the owner-lessor of the adjacent building at 2317 Canal Street. In Toussant v. Guice, 414 So.2d 850 (La.App. 4th Cir.1982), plaintiffs sued for damages sustained when a fire that began at the defendant's house spread to the neighboring house owned by the plaintiffs. This Court held that Keller v. Kelly was not applicable because the parties had no other relationship than that of ordinary adjacent landowners. In reference to Keller v. Kelly, this Court stated:
Keller is inapposite to the present case. There, the extraordinary burden of proof was imposed upon the defendant solely by virtue of the contractual relationship between defendant and plaintiff as lessor and lessee. That relationship carries its own special duties and obligations which do not apply to the relationship between ordinary adjacent landowners.
The parties in the instant case are not ordinary adjacent landowners: plaintiffs and the defendant have the contractual relationship of lessee and lessor, which `carries its own special duties and obligations.' Thus, we conclude that Keller v. Kelly is applicable to the instant case." (Footnote omitted.) Broome v. Gauthier, 443 So.2d 1127, at pages 1132, 1133 (La.App. 4th Cir.1984), writ den., 445 So.2d 449 (La.1984).
Defendants contend that Paragraph VIII of the lease contract clearly and unambiguously releases them from liability for the loss sustained by plaintiff. We disagree. As defendants correctly point out, a party to a contract can, where it is not expressly or impliedly prohibited, renounce what the law has established in his favor. LSA-C.C. Art. 11. However, any ambiguity in an instrument is resolved against the draftsman. LSA-C.C. Articles 2056 and 2057; Pique v. Saia, 450 So.2d 654 (La.1984); Nida v. State Farm Fire & Cas. Co., 454 So.2d 328 (La.App. 3rd Cir. 1984), writ den., 458 So.2d 486 (La.1984).
The evidence shows that the written lease agreement was prepared by Haas. Mr. Franklin Mikell, the former president of The Haas Investment Company, Inc., testified that Paragraph VIII of the lease instrument constituted standard language that was used in all other written lease agreements that his company executed. Mr. Mikell, who signed the lease agreement on behalf of The Haas Investment Company, Inc., further testified that he and plaintiff never discussed Paragraph VIII of the lease instrument.
As Paragraph VIII of the lease instrument does not clearly and unambiguously release defendants from liability for damages that are sustained by plaintiff as a *289 result of a cause that originates off of the leased premises, Paragraph VIII may not be used by defendants to exculpate themselves from liability for the loss incurred by plaintiff as a result of the fire which started in the premises occupied by Haas off of the leased premises. For this reason, we find that the jury did not err in finding that the language in Paragraph VIII of the written lease agreement did not release the defendants from liability for the damage complained of by plaintiff and Intervenors.

INDEMNITY AGREEMENT
In their second specification of error, defendants allege that the jury erred in failing to find that the indemnity language in the written lease agreement entitles them to an offset against any amounts which plaintiff may have been entitled to otherwise recover. The indemnity provision is also located in Paragraph VIII of the written lease agreement, and provides:
"... Lessee hereby covenants and agrees to indemnify and save harmless the Lessor from all liabilities, charges, expenses (including counsel fees) and costs on account of or by reason of any such injuries, liabilities, claims, suits or losses however occurring or damages growing out of same."
It is clear that an indemnitee may be indemnified against the consequences of his own negligence provided that the indemnitor expresses his intention to so indemnify in unequivocal terms. Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977). Additionally, it appears that an indemnitee may be indemnified against the consequences of his strict liability, provided the indemnitor expresses his intention for such indemnity in unequivocal terms. Hyde v. Chevron U.S.A., Inc., 697 F.2d 614 (5th Cir.1983); In Re Incident Aboard D/B Ocean King, 758 F.2d 1063 (5th Cir.1985). But see Soverign Ins. Co. v. Texas Pipeline Co., 470 So.2d 969 (La.App. 1st Cir. 1985), writ granted, 475 So.2d 1097 (La. 1985).
We need not decide whether, in the instant case, plaintiff expressly and in unequivocal terms agreed to indemnify Haas against its strict liability. As Paragraph VIII of the lease instrument does not clearly and unambiguously evidence plaintiff's intention to indemnify Haas against its strict liability for the condition of the portion of the Haas Building that was not leased by plaintiff, Paragraph VIII may not be used by defendants to gain reimbursement from plaintiff and Intervenors for amounts that they are otherwise liable for as a result of the fire. Pique v. Saia, supra; Nida v. State Farm Fire & Cas. Co., supra. Accordingly, we conclude that the jury did not err in failing to find that the indemnity language in the lease entitles defendants to an offset against any amounts which they would have otherwise been liable for.
For the foregoing reasons, the judgment of the trial court is affirmed at defendants-appellants' costs.
AFFIRMED.
NOTES
[1] By stipulation, Joseph Haas, Montez Haas Constant and Franklin H. Mikell, the liquidators of The Haas Investment Company, Inc., were substituted as party-defendants in the place of The Haas Investment Company, Inc.
[2] Act No. 174 of 1932 is the source provision of LSA-R.S. 9:3221 which is relied on by defendants in this case.
[3] The tenants' suit was consolidated with a suit brought by the tenant of the building in which the fire originated. The Court's discussion of the latter case is not relevant to the disposition of the instant case.