INDIANA DEPARTMENT OF NATURAL RESOURCES, and Indiana Natural Resources Commission, Appellants–Defendants,

v.

KRANTZ BROTHERS CONSTRUCTION CORP., Appellee–Plaintiff.

No. 87A04–9104–CV–126 [1].

Court of Appeals of Indiana, First District.

Nov. 20, 1991.

Rehearing Denied Jan. 13, 1992.

---

**1.** This case was diverted to this office by direction of the Chief Judge.

Linley E. Pearson, Atty. Gen., Myra P. Spicker, Deputy Atty. Gen., Div. of Reclamation, Indianapolis, for appellants-defendants.

John Wissner, Scales, Wissner & Krantz, Boonville, for appellee-plaintiff.

BAKER, Judge.

In 1980, the State of Indiana, to avoid federal assertion of control over Indiana's surface coal mining industry and the environmental management of that industry, enacted the Indiana Surface Coal Mining and Reclamation Act (the Reclamation Act).[2] Among the Reclamation Act's other requirements, coal mine operators must obtain permits to engage in surface coal mining and pay fees for the reclamation of land affected by their mining activities. There is an exemption from the permit and fee requirements, however, for "the extraction of coal incidental to the extraction of *other minerals* where coal does not exceed sixteen and two-thirds percent (16⅔%) of the tonnage of minerals removed for purposes of commercial use or sale." IND. CODE 13–4.1–1–3(12)(A) (emphasis added). This appeal calls on us to review that exemption, and the touchstone issue before us is whether the phrase "other minerals" includes topsoil. It does not.

### HISTORICAL POSTURE

In 1977, after previous attempts in 1973 and 1975, Congress passed, and the President signed, the Surface Mining Control and Reclamation Act (SMCRA).[3] SMCRA is designed to provide a uniform nationwide

**2.** IND.CODE 13–4.1–1–1 *et seq.*

**3.** 30 U.S.C.A. § 1201 *et seq.* The history of SMCRA's passage through Congress is briefly recounted in *S & G Excavating, Inc. v. United States* (1988), Ct.Cl., 15 Cl.Ct. 157, 162.

program for the reclamation of land affected by surface coal mining operations. 30 U.S.C.A. § 1202. Uniformity is to be achieved, however, not through direct United States Department of the Interior control of surface mining across the nation, but rather through Interior Department oversight authority over state programs which must be at least as stringent as the federal program. 30 U.S.C.A. §§ 1253, 1271(d). If a state fails to develop a program, or fails to develop an acceptable program after the Secretary of the Interior has rejected a proposed program, the state will not obtain permanent regulatory authority, and a federal plan will be imposed. 30 U.S.C.A. § 1254; *Hodel v. Indiana* (1981), 452 U.S. 314, 319–20, 101 S.Ct. 2376, 2381, 69 L.Ed.2d 40, 48.[4] Once a state has obtained permanent regulatory authority, it must labor diligently to enforce its approved program vigorously, or the Interior Department will take over enforcement duties. 30 U.S.C.A. §§ 1254(b), 1271(b). Indiana achieved permanent regulatory authority, known as "primacy," on July 29, 1982. *See* 30 C.F.R. § 914.10 (1991).

The heart of SMCRA is the permit, inspection, enforcement, and penalty scheme it creates. 30 U.S.C.A. §§ 1256–1271 establish detailed procedures and requirements for the acquisition and discharge of surface coal mining permits. Since its inception, however, SMCRA, like the Reclamation Act modeled upon it, has exempted from the definition of "surface coal mining operations," and therefore, from the permit and reclamation fee requirements, "the extraction of coal incidental to the extraction of other minerals where coal does not exceed 16⅔ per centum of the tonnage of minerals removed for purposes of commercial use or sale." 30 U.S.C.A. § 1291(28)(A).

Into this picture Indiana inserted the Reclamation Act, which is largely a copy of SMCRA. Indeed, the permit exemption under IND.CODE 13–4.1–1–3(12)(A) is an almost verbatim repetition of the permit exemption under 30 U.S.C.A. § 1291(28)(A). In enacting the Reclamation Act, our General Assembly made clear its unequivocal intent to avoid federal control of Indiana surface coal mining and land reclamation.[5] *See* IND.CODE 13–4.1–1–1(4); 13–4.1–1–2(1). Indeed, the first purpose of the Reclamation Act is to implement and enforce SMCRA. *Id.* Therefore, because our first goal in construing a statute is to give effect to the intent of the legislature, *Matter of P.J.* (1991), Ind.App., 575 N.E.2d 22, 27 (Baker, J., dissenting) (citing *Spaulding v. International Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307), we will look to SMCRA and the federal rules adopted under it as we analyze the Reclamation Act's exemption to the permit requirement.

## FACTS

Plaintiff-appellee Krantz Brothers Construction Corp. (Krantz) is the lessee of a parcel of land in Warrick County.[6] Since 1986, Krantz has mined the property, removing subsoil, shale, and a large amount of topsoil. There is also a coal vein, though Krantz has not yet removed any coal. In March 1989, the defendant-appellant Indiana Department of Natural Resources (the DNR), through a field inspector, made an initial determination that Krantz needed a coal mining permit, and issued a cessation order requiring Krantz to stop work. Pursuant to the Administrative Adjudication Act (the AAA),[7] Krantz requested and received an administrative hearing before an administrative law judge (ALJ) within the DNR. The ALJ found Krantz had not mined any coal before the

4. In *Hodel,* the State of Indiana unsuccessfully challenged portions of SMCRA as violative of the Tenth Amendment to the United States Constitution.

5. Indiana had a viable land reclamation scheme for decades prior to the enactment of SMCRA. *See* IND.CODE 13–4–1–1 *et seq.*

6. This is the second time litigation surrounding mining activities on this property has been be-

fore this court. In *Scales v. State* (1990), Ind. App., 563 N.E.2d 664, we affirmed the denial of declaratory relief to Krantz's landlord on the question of whether Krantz was engaged in surface mining due to the landlord's failure to exhaust administrative remedies.

7. IND.CODE 4–21.5–1–1 *et seq.*

cessation order was issued, and therefore dissolved the order.

Krantz had repeatedly expressed an interest in mining the coal vein on the property, and to that end had been involved in the Small Operators' Assistance Program (SOAP)[8] before the cessation order was issued. Krantz left SOAP, however, because it decided it was entitled to the IND. CODE 13–4.1–1–3(12)(A) exemption. Accordingly, during protracted negotiations prior to the hearing before the ALJ, Krantz and the DNR discussed Krantz's eligibility for the exemption. The eligibility question was then placed before the ALJ, who found that Krantz had not presented sufficient evidence to qualify for the exemption.

The evidence before the ALJ reveals Krantz did not provide the DNR with information concerning whether any, or how much, of the mined topsoil and other materials had in fact been sold or used commercially. Moreover, Krantz presented no substantiating evidence to show the price received for any of those materials which might have been sold.

The Natural Resources Commission (the Commission) affirmed and adopted the ALJ's decision as a final agency determination. On August 21, 1990, Krantz timely filed its complaint for judicial review[9] in Warrick Circuit Court to contest the validity of the determination that Krantz had provided insufficient evidence to qualify for the exemption.[10] The court adopted Krantz's proposed findings of fact and conclusions of law, and reversed the Commission's final order to the extent the final order denied Krantz the exemption. The DNR and the Commission now appeal.

## DISCUSSION AND DECISION

### I

#### Burden of Proof

The initial issue is whether Krantz or the DNR bears the burden of proof in resolving the question of Krantz's entitlement to the permit exemption. Krantz's proposed findings of fact and conclusions of law, adopted by the trial court, place the burden on the DNR to show why Krantz was not entitled to the permit exemption. This was error.

■ This case is before us on Krantz's complaint for judicial review of a final agency determination. In such a case, Krantz, as the party seeking agency action, bears the burden of proof in all stages of the agency proceeding. IND.CODE 4–21.5–3–14(c); Peabody Coal Co. v. Ralston (1991), Ind.App. 578 N.E.2d 751, 753. Moreover, Krantz, as a party seeking the benefit of an exemption to a general requirement, is confronted with the general rule that a party claiming an exemption must demonstrate it meets the terms of that exemption. See Storen v. Jasper County Farm Bur. Co-op Ass'n (1936), 103 Ind.App. 77, 79, 2 N.E.2d 432, 433 (if any exemption statute is ambiguous, it must be strictly construed against the party seeking the exemption).[11] Krantz bore the burden of showing it was entitled to the exemption, and the trial court erred in requiring the DNR to show why Krantz should not receive the exemption.

### II

#### The Permit Exemption

■ The parties' confusion and difficulties with this case are understandable. The language of 30 U.S.C.A. § 1291(28)(A) exempting from the permit requirement "the extraction of coal incidental to the extraction of other minerals where coal does not exceed 16⅔ per centum of the tonnage of minerals removed for purposes of commercial use or sale" is largely undefined within SMCRA. Though this language requires a great deal of definition

---

8. 30 U.S.C.A. § 1257(c). SOAP is designed to provide small coal miners with technical assistance.

9. IND.CODE 4–21.5–5–2.

10. The parties do not question the propriety of the ALJ's decision to dissolve the cessation order.

11. At oral argument held on October 9, 1991 at Vincennes University, counsel for Krantz conceded the burden of proof rested with Krantz.

not provided by Congress, it nonetheless took the Interior Department's Office of Surface Management (OSM) almost 13 ponderous years to develop a set of final rules for the interpretation and implementation of the exemption. The rules did not take effect until April 1, 1990, and herein lies the problem.

In May 1984, OSM published a set of proposed rules along with a set of guidelines for the implementation of the exemption during the comment and hearing period leading up to the promulgation of final rules. *See Extraction of Coal Incidental to the Extraction of Other Minerals,* 49 *Fed.Reg* 89, 19336 (1984). It was not until December 1989, however, that OSM settled on the final rules, which took effect in 1990. *See Extraction of Coal Incidental to the Extraction of Other Minerals,* 54 *Fed.Reg.* 243, 52092 (1989).[12] During the interim, the DNR was left in a difficult position, operating under the known possibility of federal intervention with only a set of guidelines for assistance. In any event, the guidelines and the decisional law applying 30 U.S.C.A. § 1291(28)(A) have always required the petitioner for the exemption to offer some probative evidence concerning the nature and disposition of the non-coal materials removed for commercial use or sale. *See United States v. Beaird Coal Co., Inc.* (11th Cir.1987), 825 F.2d 1471, *cert. denied* (1988), 484 U.S. 1009, 108 S.Ct. 706, 98 L.Ed.2d 656 (parties stipulated to operator's production figures and operator provided additional figures); *S & G Excavating, Inc., supra,* note 2 (operator provided production figures);[13] *Alabama Surface Mining Reclamation Comm'n v. Cordova Clay Co., Inc.* (1983), Ala.Civ.App., 434 So.2d 283 (parties stipulated production figures).[14]

Even though Krantz, as we have already stated, failed to offer such evidence, it nonetheless argues it is entitled to the exemption because it demonstrated the amount of coal available for removal was less than 16⅔ per cent of the "other minerals" because topsoil is included in those "other minerals." We disagree.

OSM has determined topsoil is not an "other mineral" for purposes of the exemption. *Extraction of Coal Incidental to the Extraction of Other Minerals,* 54 *Fed.Reg.* 243, 52092, 52096 (1989). In turn, the DNR has done the same, and Krantz contends this interpretation is erroneous because 30 U.S.C.A. § 1291(14) defines "other minerals" as

> clay, stone, sand, gravel, metalliferous and nonmetalliferous ores, and any other solid material or substances of commercial value excavated in solid form from natural deposits on or in the earth, exclusive of coal and those minerals which occur naturally in liquid or gaseous form.

This language indeed appears, as Krantz asserts, to be broad enough to include topsoil. That is irrelevant, however, because OSM has determined § 1291(14) does not apply to the exemption provisions, but rather to the Congressionally authorized and funded study of the surface mining of minerals other than coal under 30 U.S.C.A. § 1299.[15] *See Extraction of Coal Incidental to the Extraction of Other Minerals,* 54 *Fed.Reg.* 243, 52092, 52096 (1989) (citing S.Rep. No. 402, 93rd Cong., 1st Sess. 75 (1973)).

■ Both the federal courts and our courts pay great deference to the reasonable interpretation of a silent or ambiguous statute by the agency charged with administering that statute. *EPA v. National Crushed Stone Ass'n* (1980), 449 U.S. 64, 101 S.Ct. 295, 66 L.Ed.2d 268; *Continental*

---

**12.** The original set of rules merely copied the language of the exemption as written in 30 U.S.C.A. § 1291(28)(A). *See* 30 C.F.R. § 700.-11(e) (1979).

**13.** *S & G* concerned mining on a parcel of land in Vigo County, Indiana.

**14.** The 1983 *Cordova Clay* case in state court and the 1987 *Beaird Coal* case in federal circuit

court are separate actions against the same operator by the state and federal authorities, respectively.

**15.** The goal of the study is to determine the extent of the deleterious effect of non-coal surface mining on the environment with an eye toward eventual regulation of such mining. 30 U.S.C.A. § 1299(a).

*Training Services, Inc. v. Cavazos* (7th Cir.1990), 893 F.2d 877; *Department of Ins. of Indiana v. Church Members Relief Ass'n* (1940), 217 Ind. 58, 26 N.E.2d 51; *First Nat'l. Bank of Danville v. Reynolds* (1986), Ind.App., 491 N.E.2d 218, *trans. denied.* Here, the application of the definition of "other minerals" is doubtful, and may be interpreted as relevant to either § 1291 or § 1299. Accordingly, we will not disturb OSM's reasonable interpretation of that application or the DNR's acceptance of OSM's interpretation. *See S & G Excavating, Inc., supra,* note 2, at 162.[16]

Krantz also argues that the DNR cannot rely on OSM's exclusion of topsoil from the category of other minerals because 310 IAC 12–1–3 defines topsoil as the "A soil horizon layer," which in turn is defined as the uppermost mineral layer. This argument fails for the simple reason that the DNR repealed 310 IAC 12–1–3 in its entirety over a month prior to the hearing before of the ALJ. *See* 310 IAC 12–1–3 (1991).

Krantz rightly argues that OSM's guidelines cannot supersede any conflicting federal or state statutes and regulations. The rule-making function of administrative agencies is a detailed procedure, with provisions for mandatory public hearings and the public input such meetings provide. *See* IND.CODE 4–22–2–24; 4–22–2–26. Underlying this procedure are the concerns of due process and agency adherence to legislative authority, as well as the idea of encouraging participatory government. A guideline, promulgated as an expression of agency opinion, with none of the procedural safeguards of the rule-making process, cannot have effect in disregard of statutes and properly promulgated rules. *See Drake v. Indiana Dep't of Natural Resources* (1983), Ind.App., 453 N.E.2d 293. Just as an agency rule out of harmony with the relevant statute will not be enforced, *C & C Oil Co., Inc. v. Indiana Dep't of State*

*Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, neither will a guideline out of harmony with relevant statutes or regulations be enforced.

As our discussion of Krantz's argument shows, however, no conflicting federal or state authority existed during the processing of Krantz's application, and none exists now. Therefore, the DNR, in the exercise of its limited discretion, did not wrongfully rely on OSM's guidelines.

### III

### *Standard of Review–Substantial Evidence*

The parties next debate the proper standard of review we are to employ. Krantz urges us to review the trial court's decision under Ind.Trial Rule 52(A) because the trial court entered specific findings and conclusions. *See Vanderburgh County Bd. of Commissioners v. Rittenhouse* (1991), Ind. App., 575 N.E.2d 663. Because this is a review of an agency determination under the AAA, however, both the trial court and this court are bound by a limited scope of review.

We conduct our review solely to determine whether the agency had jurisdiction over the subject matter of the case, whether the agency's decision was based on proper procedure and was supported by substantial evidence, whether the decision was arbitrary or capricious, or whether the decision was in violation of any constitutional, statutory, or legal principle. *Peabody Coal Co., supra.* The party seeking relief from an agency decision bears the burden of proof to disclose an error warranting reversal. *Id.; Mugg v. Stanton* (1983), Ind.App., 454 N.E.2d 867; IND. CODE 4–21.5–5–13(a). The reviewing court may neither try the case de novo nor

---

**16.** We are not persuaded that the *S & G* court's inclusion of topsoil as an "other mineral" is binding. The *S & G* court relied greatly on the fact that the OSM guidelines were published more than two years after production at the mine in question had ceased. *Id.* at 166. Here, on the other hand, OSM's exclusion of topsoil from the definition of "other minerals" has now

existed for several years, and Krantz has not yet begun to remove coal from the mine in question.

Moreover, the *Cordova Clay* and *Beaird Coal* decisions provide little guidance because those cases did not concern the "other minerals" portion of the exemption.

substitute its judgment of factual matters for that of the agency. IND.CODE 4–21.5–5–11; *Indiana Education Employment Relations Bd. v. Board of School Trustees of Baugo Community Schools* (1978), 176 Ind.App. 680, 377 N.E.2d 414, *appeal after remand,* (1980) Ind.App. 412 N.E.2d 807.

■ Here, the evidence supporting the ALJ's determination included Krantz's failure to provide support of its claim concerning the amount, if any, and the price received, of its sales of topsoil and other materials. Under the Guidelines and the case law applying § 1291(28)(A), Krantz's failure of proof in this area was fatal to its claim, and the trial court erred in concluding the ALJ's determination was unsupported by substantial evidence.

## CONCLUSION

The DNR properly relied on the OSM guidelines, and the ALJ's determination that Krantz had not demonstrated its entitlement to the exemption was supported by substantial evidence. The trail court therefore erred in reversing the Commission's final determination.

Judgment reversed.[17]

RATLIFF, C.J., and ROBERTSON, J., concur.

---

17. We remind the DNR that OSM's final rules have now been in place for over a year and a half. *See* 30 C.F.R. § 702 (1991). To ensure federal intervention does not occur, it is now incumbent on the DNR to promulgate rules of its own. As we discussed earlier, SMCRA prohibits any DNR rule from being less stringent than its federal counterpart, 30 U.S.C.A. §§ 1253, 1271(d). As of 1991, however, the DNR must also ensure that its rules are no *more* stringent than their federal counterparts. IND. CODE 13–4.1–1–5(1). Thus, it seems likely the DNR will model its rules upon the federal,

thereby ensuring a relatively short promulgation time.

Moreover, this litigation has gone on long enough. The federal rules allow and require operators to demonstrate on an annual basis their entitlement to the exemption. Now that the topsoil question has been settled, and the DNR's obligations under state and federal mandates are clear, it would be advisable for Krantz and the DNR to come to an accord, so that Krantz, if it so desires, can file a proper exemption petition.