**PEABODY COAL COMPANY**
Appellant–Petitioner

v.

**INDIANA DEPARTMENT OF NATURAL
RESOURCES Appellee–Respondent.**

No. 87A01–9402–CV–36.

Court of Appeals of Indiana,
First District.

Sept. 26, 1994.

Rehearing Denied Nov. 29, 1994.

David R. Joest, Henderson, KY, for appellant.

Pamela Carter, Atty. Gen., Myra P. Spicker, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Peabody Coal Company appeals from the judgment of the trial court which affirmed the final order of the Administrative Law Judge of the Natural Resources Commission (ALJ). Peabody raises two issues on appeal, but our resolution of the first is dispositive:

> Whether the Administrative Law Judge erred in holding that a provision of Peabody Coal Company's approved mining permit required that the side slopes of a temporary diversion ditch be vegetated.

We affirm.

The Department of Natural Resources (DNR) issued a notice of violation to Peabody for violations of regulations adopted pursuant to the Indiana Surface Mining Control and Reclamation Act and for violations of Peabody's approved mining permit. Peabody requested administrative review; and the ALJ affirmed the notice of violation, based upon violation of the permit, in its final order. Peabody then sought judicial review in the trial court insofar as the final order held that Peabody had failed to maintain a drainage ditch in accordance with the terms of its mining permit. The trial court ultimately affirmed the final order.

The evidence reveals that the notice of violation involves a drainage, or diversion, ditch originally designed to divert drainage around mine excavations. Peabody subsequently modified the ditch to incorporate a series of sedimentation ponds or basins to receive water pumped out of the active mine operations. The ditch is temporary because, as the mine operations progress over the next couple of years, Peabody will mine through the ditch. The notice of violation alleged that Peabody had failed to maintain diversions and appurtenant structures so that they remained stable through the "timely establishment of vegetation." The ditch was the subject of erosion and could carry

sediment off of the mine site to pollute adjacent areas, but the discharge which flowed off of the permit area had not exceeded effluent limits.

Peabody's mining permit contains a provision which states, in part, "[t]he side slopes of freshwater diversions will be promptly seeded after construction." The ALJ concluded that:

33. ... A further reading indicates this section was meant to apply to all diversion regardless of whether temporary or permanent ...

34. Peabody failed to maintain this diversion in accordance with the terms of its permit.

35. Accordingly, the [notice of violation] should be affirmed.

Peabody claims the ALJ misconstrued the permit provision, as it was never intended to apply to the diversion ditch in this case. During the hearing before the ALJ, a discrepancy arose about the permit provision in question. The DNR inspector's copy of the permit contained the provision but the DNR's public file copy did not. The parties stipulated certain facts about the permit provision and its ultimate applicability to the mine. As originally submitted, the permit did not contain the provision. As finally approved, however, the provision was present.

Peabody distinguishes "ditches which carry disturbed area drainage to sediment ponds" from "freshwater diversions." Peabody bases this distinction on the language of the permit. Peabody stated in the original permit:

For ditches which carry disturbed area drainage to sediment ponds, the sediment basin will serve to minimize additional contributions of suspended solids to stream flow or runoff outside the permit area.

The DNR requested that Peabody "expand on the differences between erosion control measures to be implemented in diversions leading to sediment basins and freshwater diversions." In response, Peabody included the language, quoted above, that the "side slopes of freshwater diversions will be promptly seeded after construction." Pea-

body claims that, inasmuch as the diversion in question was a ditch which carries disturbed area drainage to sediment ponds, it is not a freshwater diversion and need not have been promptly seeded after construction.

█ We are a Court of review. We do not address agency matters de novo or substitute our judgment of factual matters for that of the agency. *Indiana Department of Natural Resources v. Krantz Brothers Construction Corp.* (1991), Ind.App., 581 N.E.2d 935, 940–941.

█ Peabody's contention is based upon the supposition that "ditches which carry disturbed area drainage to sediment ponds" are necessarily separate and distinct from "freshwater diversions." We are not prepared to accept such a broad assumption. A proper construction could "divert" fresh water from undisturbed areas into a diversion which carries sedimentary water to sediment ponds.

Peabody acknowledges that, although originally · designed to divert drainage from around the mine excavations, Peabody modified the ditch in question to incorporate a series of sedimentation ponds or basins to receive water pumped out of active mine workings. Thus, the original function of the ditch was not to receive water pumped out of active mine operations but to divert drainage around the mine excavations. That original function may fairly be characterized as a freshwater diversion. Peabody has identified nothing in the record to indicate the ditch in question has lost that original part of its function upon modification. As a result, one could properly conclude that a portion of the ditch's function is still to engage in freshwater diversions even though the basins also receive water pumped out of active mine operations. In other words, the diversion did not have the purpose solely to lead to sediment basins. As the trial court stated the matter:

The ALJ correctly and reasonably construed the permit language to mean that the diversion was a freshwater diversion which carried runoff from both disturbed (by mining activities) and undisturbed areas and which passed drainage through sediment control structures.

Pursuant to Peabody's permit, the ALJ justifiably concluded that the ditch in question engaged in freshwater diversion and should have been promptly seeded after construction. The trial court correctly affirmed the final order of the ALJ.

Judgment affirmed.

BAKER, and CHEZEM, JJ., concur.