INDIANA STATE PRISON and State Employees' Appeals Commission, Appellants–Respondents,

v.

Tony SIMCHAK, Charles Musgrave, Billy Sightes, Robert Cassidy, William Van Ulzen, Lowell Hardwick, Jack Martin, Thomas Moore, Everett Smock and Rick Robinson, Appellees–Petitioners.

No. 49A02–9209–CV–412.

Court of Appeals of Indiana, Second District.

May 27, 1993.

Transfer Denied Aug. 2, 1993.

Pamela Carter, Atty. Gen., Sabra A. Weliever, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellants-respondents.

Karl L. Mulvaney, Sharon L. Groeger, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellees-petitioners.

SULLIVAN, Judge.

The Indiana State Prison and the State Employees' Appeals Commission (hereinafter collectively referred to as "State") appeal the trial court's grant of higher wages and back pay to certain persons employed as teachers at the Indiana State Prison in Michigan City, Indiana. Upon appeal, the State presents three issues for our review. However, one of those issues is dispositive. The focal point of our review is whether the number of student contact hours is relevant in determining the appropriate "daily rate of pay" as that phrase is used in I.C. 11–10–5–4 (Burns Code Ed.1992).

We reverse.

The ten persons who comprise the appellees in this action are employed as teachers at the Indiana State Prison (ISP) located in Michigan City, Indiana. Salaries for ISP teachers are prescribed by I.C. 11–10–5–4, which reads, in pertinent part,

"(e) If the school corporation in which the correctional institution is located becomes the largest school corporation in the county in which the correctional institution is located, the daily rate of pay for each teacher must be equal to that of the school corporation in which the correctional institution is located without regard to whether the school corporation in which the correctional institution is located remains the largest school corporation in the county.

(f) Using a daily rate of pay for each teacher, the salary schedule for each correctional institution located in a county having a population of:

(1) More than fifteen thousand (15,000) but less than sixteen thousand (16,000); or

(2) More than seventy-five thousand (75,000) but less than seventy-eight thousand (78,000);

must be equal to that of the school corporation in which the correctional institution is located."

The prison is located within the boundaries of the Michigan City Area School Corporation (MCASC) which is and has been since 1985 the largest school corporation within LaPorte County. Accordingly, pursuant to the statute, ISP teachers' daily rate of pay is to be equal to that of MCASC teachers. ISP teachers contend that in order for their pay to "equal" MCASC teachers' pay, proper consideration must be given to, and appropriate adjustments made for, a disparity in working conditions between the two.

MCASC teachers are required to work six hours and forty minutes per day. A standard working day includes five hours of class time (so-called "student contact hours"), a lunch period, and a one-hour preparation period. Teachers who work such standard hours are paid according to a salary schedule approved by the school board. However, it appears that not all teachers in the MCASC work a "standard" day. Paragraph .0506 of the MCASC 1987–89 teachers' contract states:

"Principals may ask teachers to give up their regular preparation period in order to cover a class for which a substitute teacher is not hired on a daily basis or to cover a class for a semester or a year to avoid hiring a part-time teacher or assigning a teacher to multiple buildings. A teacher accepting such an assignment shall receive payment equal to his/her hourly rate and shall reschedule his/her preparation period prior to or following regular school hours with the approval of the appropriate administrator(s). The intent of this provision is to cover emergency situations, not to schedule several teachers for an extra class to accomplish a reduction in the teaching staff. Vocational teachers teaching two three-hour vocational classes shall be compensated for six (6) hours. This clause shall not apply for coaches under .0805." Record at 248.

The standard day of teachers working pursuant to paragraph .0506 consists of six student-contact hours and an additional period for preparation. In 1990, the MCASC enacted a salary schedule reflecting the mandate contained in .0506 regarding the pay to be received by teachers working the schedule set out in that paragraph: such teachers are to be paid their normal hourly rate for the extra hour of work. For clarity's sake, we shall hereafter refer to this salary schedule as the ".0506–salary schedule".

Several ISP teachers initiated merit employee complaints pursuant to I.C. 4–15–2–35 (Burns Code Ed.1990), contending that they should be paid pursuant to the .0506–salary schedule rather than the standard schedule. The Indiana State Personnel Department denied the petitions, and the employees appealed to the State Employees' Appeals Commission (SEAC). After a hearing, a SEAC hearing officer concluded that the employees' petitions were properly denied. The ISP teachers timely petitioned the Marion County Superior Court for judicial review of the SEAC decision. The trial court overturned the agency decision and granted the ISP teachers' petitions, based upon a finding that

"MCAS calculates its teachers' salaries according to two different rates and has done so since 1985. This practice was set out in a written salary schedule in 1990. MCAS teachers who have five (5)

"student contact hours" are compensated at one rate; those who have six (6) student contact hours are compensated at a rate which is 16.6% higher." Record at 577.

Our inquiry in the instant case is confined to a review of the trial court's interpretation of the meaning of I.C. 11–10–5–4. In such cases, we are not bound by the trial court's interpretation, but rather must make an independent legal determination as to the statute's meaning and application to the instant facts. *See Pazzaglia v. Review Board of Indiana Department of Employment and Training Services* (1993) 2d Dist. Ind.App., 608 N.E.2d 1375.

The instant inquiry is reducible to a single question: what is the relevance, if any, of "student contact hours" in the determination of which salary schedule applies to ISP teachers?

ISP teachers are required by statute to work eight-hour work days. I.C. 4–15–2–29 (Burns Code Ed.1990); 31 IAC 2–11–1 (1984). It is therefore apparent that the manner in which those hours are divided between various tasks and responsibilities is not determinative. Although a dispute exists as to the nature of a standard work day for ISP teachers (i.e., number of student-contact hours), we will assume, *arguendo*, but without deciding, that the teachers are correct in their assertion that their standard working day consisted at all relevant times of six student-contact hours, with the remainder divided between preparation time and lunch. The teachers contend that because of the way time is allocated during their standard working day, the trial court correctly concluded that they should be paid at the same rate as MCASC teachers whose work day also consists of six student-contact hours.

Indiana Code 11–10–5–4, the wage-setting statute in question, was enacted in 1979. Originally, it read as follows:

"All teachers employed by the department are subject to all provisions of law concerning minimum salary of teachers and membership in any teachers' retirement fund plan. The commissioner or his designated representative shall annually determine the fully integrated salary schedule of the largest school system of the county in which each correctional institution is located. From this information, he shall prescribe a fully integrated salary schedule for each of these institutions *equal to that of the largest school system in the county in which it is located* and prescribe the terms of the annual contract awarded to licensed teachers qualifying for payment under this schedule." (Emphasis supplied). (Burns Code Ed.1981).

In *State v. Martin* (1984) 4th Dist. Ind. App., 460 N.E.2d 986, our Fourth District addressed a dispute similar in origin to the instant case, but which arose under I.C. 11–10–5–4. As chronicled in *Martin*, several ISP teachers filed grievances prior to 1982, complaining that they were not being compensated in accordance with I.C. 11–10–5–4, which at that time read as above quoted. The teachers' original complaint alleged unsatisfactory working conditions, noting that the teachers in the relevant school corporation were working six-and-one-half-hour days, while the ISP teachers were working eight-hour days, yet both received the same amount of pay. An arbitrator ruled that such was contrary to the provisions of I.C. 11–10–5–4, because "equal" pay, as used in that statute, meant the same hourly rate. Accordingly, the arbitrator ordered the State to pay ISP teachers at the same hourly rate as public school teachers, either by reducing the number of hours ISP teachers worked, or increasing the amount of ISP teachers' paychecks. This order was upheld by a trial court upon challenge by the State.

The arbitrator's ruling and subsequent court proceedings apparently did not escape the attention of our legislature. In 1982, the legislature amended I.C. 11–10–5–4 and clarified its intention that "equal" means the same *daily* rate, not the same hourly rate. The legislature thus has expressed its intent that ISP teachers earn the same amount *per day* as public school corporation teachers, notwithstanding that there may exist a disparity both between the number of hours each works during a standard working day.

■ From this, we conclude that the legislature did not intend that an ISP teacher's salary reflect equality of working conditions between teachers working for ISP and teachers employed by the relevant school corporation. Moreover, we discern no indication that the legislature intended that working conditions be a factor at all in determining ISP teachers' pay. Rather, the intent underlying I.C. 11–10–5–4 is that prison teachers working what is for them a standard day should be paid the same daily rate as public school teachers working what is for them a standard day. It is of no moment that a prison teacher's standard working day differs from that of a public school teacher's.

In the final analysis, the .0506 salary-schedule is nothing more than a schedule reflecting overtime pay; that is, it provides that MCASC teachers who work 16.6% more hours than their standard amount receive 16.6% extra pay.[1] Should the State authorize working overtime hours such as paragraph .0506 describes, prison teachers working such hours would presumably be paid according to the provisions of the .0506–salary schedule.

In conclusion, ISP teachers work a standard day as defined by statute and are to be paid according to the salary schedule applicable to MCASC teachers who work what is for them a standard day. We note that the legislature, in enacting I.C. 11–10–5–4, clearly did not contemplate a scenario in which a school corporation would have more than one salary schedule. Presumably, such could arise. However, that situation is not before us, and we leave that question for another day.

The judgment of the trial court is reversed and the decision of the State Employees' Appeals Commission is reinstated.

SHIELDS and BAKER, JJ., concur.

---

1. Teachers who opt for the sixth student-contact hour are required by paragraph .0506 to reschedule their preparation period to either immediately before or immediately after school. Thus, instead of working six total hours, such teachers work seven hours, or 16.6% more than normal.