STATE EMPLOYEES' APPEALS COMMISSION, et al., Appellant–Defendant,

v.

Tom BARCLAY, et al., Appellees–Plaintiffs.

No. 49A04–9708–CV–342.

Court of Appeals of Indiana.

April 29, 1998.

---

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellant–Defendant.

Mary Jane Lapointe, Richard J. Darko, Lowe Gray Steele & Darko, Indianapolis, for Appellees–Plaintiffs.

## OPINION

BAKER, Judge.

Appellant-defendant, the State Employees' Appeals Commission (SEAC) appeals the trial court's order awarding plaintiffs-appellees, who are fifty-seven teachers at various insti-

tutions within the Indiana Department of Correction (DOC), additional compensation for hours worked in excess of those worked by their counterparts at other State institutions. Specifically, SEAC contends that the teachers are not entitled to additional compensation because the relevant statutes provide for a daily rate of pay equal to that of the largest school system in the county where that particular institution is located. SEAC also asserts that any inequality in the number of hours worked did not rise to the level of a state-sanctioned disparity.

## FACTS [1]

The facts most favorable to the judgment reveal that on August 30, 1993, the Indiana Director of State Personnel issued a memo to his agency heads informing them that the State was adopting a new policy regarding work hours for State employees. This memo explained that the number of hours State employees were required to work would be revised to thirty-seven and one-half, rather than forty hours per week. In response to this memo, teachers from several State institutions employed within the DOC filed grievances with the State Personnel Department. Specifically, they alleged that they were entitled to additional compensation from the State because, during specified time periods, they were required to work forty hours per week, while teachers at other State institutions were permitted to work thirty seven and one-half hours per week. Prior to the hearing, the parties stipulated that a disparity existed in the hours worked at the various institutions.

On September 19, 1995, a hearing was conducted before an Administrative Law Judge (ALJ). During the hearing, the teachers argued that, based on State administrative rules, the State was required to pay State employees, within the same classification, equal pay for comparable work. The teachers further contended that, because they were required to work more hours than teachers at other State institutions before the September 1993 directive was issued, they were entitled to additional compensation.

Following the hearing, the ALJ issued an order recommending that SEAC deny the teachers' claims for back pay. SEAC then adopted the ALJ's order and denied the teachers' request. SEAC concluded that the number of hours worked by the institutional teachers did not determine their compensation because the salaries of institutional teachers are not tied to the number of hours worked, but to the salary schedule of the largest school corporation in the county.

On April 11, 1996, the teachers petitioned for judicial review of SEAC's order, claiming that the decision was arbitrary, capricious and unsupported by the evidence. Following a hearing, the trial court reversed SEAC's decision, and entered judgment for the teachers. The trial court determined that the teachers were entitled to back pay, because they should be treated the same as other similarly situated institutional teachers. The trial court further ruled that the teachers should not have been required to work forty hours per week at the statutory rate, while teachers at other institutions worked only thirty seven and one-half hours per week. SEAC now appeals.

## DISCUSSION AND DECISION

### I. Standard Of Review

This case is before us on the teachers' complaint for judicial review of a final agency determination. In such a case, we conduct our review solely to determine whether the agency's decision was supported by substantial evidence, whether the decision was arbitrary or capricious, or whether the decision was in violation of any constitutional, statutory, or legal principle. *Indiana Dep't Of Natural Resources v. Krantz*, 581 N.E.2d 935, 940 (Ind.Ct.App.1991). The party seeking relief from an agency decision bears the burden of proof to disclose an error warranting reversal. *Id.* This court is prohibited from reweighing the evidence and must accept the facts as determined by the administrative body. *Indiana Dep't Of Human Serv. v. Firth*, 590 N.E.2d 154, 156 (Ind.Ct.App.1992), *trans. denied.* Additionally, we pay due deference to the interpretation of a

---

1. Oral argument was heard in this cause on    March 10, 1998, in Indianapolis, Indiana.

statute by the administrative agency charged with its enforcement in light of its expertise in its given area. *Natural Resources Comm'n v. Porter County*, 576 N.E.2d 587, 589 (Ind.1991).

## II. Equal Pay for Equal Work

■ SEAC initially argues that the trial court erroneously entered judgment for the teachers by awarding them back pay. Specifically, SEAC contends that the statutes governing compensation for teachers at state institutions authorize the State to pay institutional teachers a salary rate which is different than that paid to other State employees within the same classification.

The statutes upon which SEAC relies with regard to an institutional teacher's rate of pay provide in relevant part as follow:

IND.CODE § 11–10–5–4:

(a) All teachers employed by the department [of corrections] are subject to all provisions of law concerning the minimum salary of teachers ...

(b) [T]he commissioner shall prescribe, subject to approval by the state personnel department and the budget agency, a salary schedule for each correctional institution, using a daily rate of pay for each teacher, which must be equal to that of the largest school corporation in the county in which the correctional institution is located.

IND.CODE § 12–24–3–4:

(a) Each year the director shall set a salary schedule for each of the educational systems established in a state institution ...

(b) The director shall set a salary schedule by using a daily rate of pay for each teacher that equals the rate of pay of the largest school corporation in the county in which the state institution is located. If the school corporation in which the state institution is located becomes the largest school corporation in the county in which the state institution is located, the daily rate of pay for each teacher must equal that of the school corporation in which the institution is located, without regard to whether the school corporation in which

the state institution is located remains the largest school corporation in the county.

IND.CODE § 16–19–6–7:

(a) The state health commissioner shall annually review the salary schedules of the largest school corporation of the county in which each special institution placed under the control of the administrative unit is located to determine the salary schedule of that school corporation.

(b) [T]he state health commissioner shall ... prescribe, subject to approval by the state personnel department and the budget agency, a salary schedule for each special institution described in subsection (a), using a daily rate of pay for each teacher, which must be equal to that of the largest school corporation in the county in which the institution is located.

As these statutes reflect, the salary rate for State institutional teachers is calculated by using a daily rate of pay for each teacher equal to the rate of pay of the largest school corporation in the county in which the state institution is located. Thus, institutional teachers' salaries may vary according to the pay rate in each county. Notwithstanding these statutory provisions, the teachers maintain that they must be paid back wages because the State violated its own equal pay for comparable work rule.

In support of their contention, the teachers cite to 31 I.A.C. 2–4–2(a), the equal pay provision, which provides as follows:

All regulations affecting administration of the pay plan shall be designed, in accordance with the intent and purposes of IC 4–15–2–1 of the State personnel act, as amended, to guarantee equal opportunities and equal incentives for entrance to the service, equal pay for comparable work in the several agencies of the state service, and opportunity for advancement according to fair standards of accomplishment.

As the teachers note, there is an apparent conflict between the equal pay provision and the statutes quoted above regarding the pay rate for institutional teachers. Thus, we must turn to our venerable rules of statutory construction.

In construing statutes, our primary task is to determine and implement the intent of the legislature. *Indiana Dep't of State Revenue v. Ft. Wayne Nat'l Corp.*, 649 N.E.2d 109, 113 (Ind.1995), *cert. denied*, 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204. In gleaning such an intent, we presume that the legislature is mindful of court decisions and existing law. *Pea v. Pea*, 498 N.E.2d 110 (Ind.Ct.App.1986), *trans. denied*.

In the instant case, the equal pay provision was promulgated in 1946. However, the statutes providing for the teachers' daily rate of pay according to the largest county school system, were enacted several years later.[2] Therefore, presuming as we may, that the legislature was aware of that provision when it enacted the statutes, it must have intended to exempt institutional teachers from the rule. As a result, the salary rate for the institutional teachers, in the instant case, is governed by the statutes rather than the equal pay provision.[3]

Nevertheless, the teachers also rely upon our decision in *Arden & Coulter v. State Employees' Appeals Comm'n*, 578 N.E.2d 769 (Ind.Ct.App.1991), *trans. denied*, in support of their argument that they are entitled to back wages. In *Arden*, a particular administrative rule required all State employees to work forty hours per week, while another rule authorized only state office employees to work fewer hours per week. *Id.* at 771. As a result, a system was created that required State institutional clerical workers to work forty hours per week, while permitting state office employees to work thirty-seven and one-half hours per week. *Id.* at 772–73. On appeal, we held that this system violated the equal pay provision because it required overtime-eligible clerical employees in a given classification to work forty hours per week for the same salary as that earned by other clerical employees in the same classification who work only thirty-seven and one-half hours per week. We also observed that the State had engaged in disparate treatment of certain employees who performed the same work as their counterparts. *Id.* at 770–71. Thus, the teachers contend that because teachers at all State institutions performed comparable work, the teachers who worked forty hours per week before September of 1993, are entitled to back wages. We disagree.

Despite the teachers' contentions, we cannot say that *Arden* applies to the instant case. Unlike the clerical employees in *Arden*, here the employees who are seeking to apply the equal pay provision are institutional teachers. However, we have already stated that the statutes control the institutional teacher pay rate. Additionally, unlike in *Arden*, we cannot say that the disparity in the pay rate here was state sanctioned. The regulation in effect at the relevant time required all institutional teachers to work a forty-hour week. R. at 18. Although it is undisputed that a disparity existed, nothing in the record reveals that it was due to another regulation adopted by the State. Rather, it appears that the disparity in hours worked stemmed from differing interpretations by institutional supervisors as to how the teachers' hours were to be calculated. R. at 19. Such aberrations or mistakes by individual institutions or supervisors in enforcing the rule did not create the same type of established, state-sanctioned disparity that resulted in *Arden*. Therefore, according to their arguments set forth above, the teachers have failed to make any showing that they were entitled to receive back wages.

## CONCLUSION

In light of our resolution of the issues set forth above, we conclude that the trial court erroneously determined that the State violated the equal pay provision because the statutes control the institutional teachers' pay rate and provide that those teachers receive a daily rate of pay based upon the rate of pay

2. Our legislature enacted I.C. § 12–24–3–4 and I.C. § 16–19–6–7 in 1961. I.C § 11–10–5–4 was promulgated in 1979.

3. The relevant statutes make it clear that the institutional teachers are compensated on a flat, daily rate. *See also Indiana State Prison v. Simc-hak*, 615 N.E.2d 112, 113 (Ind.Ct.App.1993), *trans. denied*. Thus, even if the teachers were subject to the equal pay rule, the number of hours worked would not alter the compensation received.

of the largest school corporation in the county. We further note that there was no evidence of any state-sanctioned disparate treatment of teachers who worked at various State institutions. Thus, we reverse the trial court's judgment and deny the teachers' claims for back wages.

Judgment reversed.

NAJAM and BAILEY, JJ., concur.