

**FILED**

Mar 19 2015, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Kristin Garn
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR *AMICUS CURIAE*
BIG RED LIQUORS INC.

John B. Herriman
Michael P. Maxwell, Jr.
Clark Quinn Moses Scott & Grahn, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Matthew Price
Karl L. Mulvaney
Margaret M. Christensen
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana Alcohol and Tobacco Commission, | March 19, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 49A02-1408-MI-529 |
| v. | Appeal from the Marion Superior Court |
| | The Honorable Robert R. Altice, Jr., Judge |
| Lebamoff Enterprises, Inc., | |
| *Appellee-Petitioner* | Trial Court Cause No. 49D11-1202-MI-8272 |

**Bradford, Judge.**

# Case Summary

[1] Title 7.1 of the Indiana Code sets forth statutory restrictions relating to the sale of alcoholic beverages within the State of Indiana. Title 7.1 differentiates between the available permits for the sale of liquor, beer, and wine. With respect to the sale of wine, Title 7.1 further differentiates between various types of available permits. The General Assembly has crafted different rules and regulations for each of the available permits. These rules and regulations allow the permit holder to complete certain actions and restrict the permit holder from completing certain actions. The General Assembly has stated that the classifications and differentiations made in Title 7.1 are real and are substantially related to the accomplishment of the purposes of this title. As such, one can reasonably presume that the level of care undertaken by the General Assembly in differentiating between the rules and regulations that apply to the different types of permits indicates that the General Assembly intended for the rules and regulations relating to each individual type of permit to be read alone, and not for any differences between the rules and regulations relating to the different types of permits to be harmonized with each other upon review.

[2] In the instant matter, Appellant-Respondent the Indiana Alcohol and Tobacco Commission (the "ATC") determined that Appellee-Petitioner Lebamoff Enterprises, Inc. ("Lebamoff"), which holds a liquor dealer's permit, had violated the applicable rules and regulations relating to the home delivery of wine. Lebamoff sought judicial review of the ATC's interpretation in the trial

court which, upon review, held in favor of Lebamoff. The ATC appealed. Concluding that the ATC's interpretation of the applicable rules and regulations was reasonable and did not amount to an improper exercise of the ATC's rulemaking function, we reinstate and affirm the ATC's final order.

# Facts and Procedural History

[3] Our decision in the parties' prior appeal of the matter to this court provides the following:

> Lebamoff is an Indiana corporation that operates liquor stores in northern Indiana and holds a liquor dealer['s] permit, the scope of which is detailed at Indiana Code section 7.1-3-10-7. Beginning in 2008, the [ATC] issued six citations to Lebamoff alleging violations of its permit, stemming from Lebamoff's use of common carriers to transport product to customers for sales generated through fulfillment companies.[1]
>
> Lebamoff appealed the citations. Following a hearing in November 2011, [an Administrative Law Judge ("ALJ")] issued findings of fact and conclusions of law on January 18, 2012, concluding that Lebamoff had violated the statute by using common carriers. The ALJ recommended that Lebamoff be fined one thousand dollars for each violation and that Lebamoff's permit be suspended for sixty days, with the suspension to be deferred for one year on the condition that all fines were paid and Lebamoff did not accrue any further violations during the deferral period. The ATC approved the recommendations and issued its final order on February 7, 2012.

---

[1] On at least one occasion, the wine at issue was signed for and taken into possession by the nineteen-year-old daughter of the intended recipient. Neither the intended recipient nor his nineteen-year-old daughter were ever asked to provide identification or to show proof that they were of legal age before purchasing or accepting possession of the wine in question.

*Lebamoff Enterprises, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 987 N.E.2d 525, 526-27 (Ind. Ct. App. 2013).

[4] On February 29, 2012, Lebamoff filed a petition for judicial review of the ATC's final order. In its petition for judicial review, Lebamoff argued that the ATC's interpretation of Indiana Code section 7.1-3-10-7 was unreasonable. On March 28, 2012, the ATC filed a response to Lebamoff's petition in which the ATC argued that the issues raised by Lebamoff were barred by the doctrines of *res judicata*, collateral estoppel, and judicial estoppel.

[5] On April 10, 2012, the ATC filed a request for the trial court to dismiss the case for failure to file the administrative record. The trial court granted the ATC's motion on September 20, 2012. Lebamoff appealed, and, on April 26, 2013, we concluded that although Lebamoff did not meet the requirements for filing an agency record that are set forth in the Administrative Orders and Procedures Act ("AOPA"), the materials submitted with the petition were sufficient for judicial review of the legal question at issue. *Id*. at 531. We then remanded the matter to the trial court for further proceedings. *Id*.

[6] On January 23, 2014, the ATC filed a brief in opposition to Lebamoff's petition for judicial review. Lebamoff responded to the ATC's brief in opposition on February 7, 2014. On July 8, 2014, the trial court issued an order in which it found that the ATC's interpretation of Indiana Code 7.1-3-10-7(c) was incorrect and that the ATC's final order amounted to an improper attempt to exercise the ATC's rulemaking function. This appeal follows.

# Discussion and Decision

On appeal, the ATC contends that, in reversing its decision, the trial court erroneously determined that its interpretation of the relevant statutory language was unreasonable. In support, the ATC argues that the relevant statutory language—which it claims does not allow for wine sold by Lebamoff to be delivered to a customer's residence by a common carrier—is unambiguous and allows for only one reasonable interpretation. The ATC also contends that the trial court erroneously determined that its order reflected an improper attempt to create an agency rule rather than an administrative adjudication.

For its part, Lebamoff contends that the trial court properly determined that the ATC's interpretation of the relevant statutory language was unreasonable. In support, Lebamoff argues that the rules of statutory construction indicate that Title 7.1 should be read together in a harmonious fashion. Lebamoff further argues that when Title 7.1 is read together in a harmonious fashion, the only reasonable interpretation would allow Lebamoff to ship wine to customers via common carrier. In making this argument, Lebamoff points to certain portions of Title 7.1 which allow for the shipment of wine via common carrier if certain requirements are met, and argues for a broad interpretation of the meaning of the term "permit holder." Lebamoff also contends that the trial court's determination that the ATC's order reflected an improper attempt to create an agency rule was proper because the ATC failed to follow the necessary procedures for completing its rulemaking function.

# I. Standard of Review

While the legislature has granted courts the power to review the action of state government agencies taken pursuant to the [AOPA], this power of judicial review is limited. *See State Bd. of Registration for Prof'l Eng'rs v. Eberenz*, 723 N.E.2d 422, 430 (Ind. 2000); *Indiana Dep't of Envtl. Management v. Conard*, 614 N.E.2d 916, 919 (Ind. 1993); *Indiana Dep't of Natural Resources v. United Refuse Co.*, 615 N.E.2d 100, 103 (Ind. 1993). A court may only set aside agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

*See* Ind. Code § 4-21.5-5-14(d).

*LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000). "The party seeking judicial review bears the burden to demonstrate that the agency's action is invalid." *Pendleton v. McCarty*, 747 N.E.2d 56, 61 (Ind. Ct. App. 2001) (citing Ind. Code § 4-21-5-5-14(a)).

A review of an administrative agency's decision at the trial court level "is not intended to be a trial *de novo*, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence." *Whirlpool Corp. v. Vanderburgh Cnty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007) (citing *Amoco Oil Co. v. Comm'r of Labor*, 726 N.E.2d 869, 872 (Ind. Ct. App. 2000)). A party may appeal a trial court's determination of the propriety of the

administrative agency's decision pursuant to the rules governing civil appeals. *See* Ind. Code § 4-21.5-5-16. "When reviewing an administrative agency's decision, appellate courts stand in the same position as the trial court." *Pendleton*, 747 N.E.2d at 61 (citing *Amoco*, 726 N.E.2d at 872).

[11] An appellate court "may not substitute [its] judgment on factual matters for that of the agency and are bound by the agency's findings of fact if [the findings] are supported by substantial evidence." *Whirlpool*, 875 N.E.2d at 759 (citing *Ind. Dep't of Natural Res., Law Enforcement Div. v. Cobb*, 832 N.E.2d 585, 590 (Ind. Ct. App. 2005)).

> Furthermore, courts that review administrative determinations, at both the trial and appellate level, review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. [*Amoco*, 726 N.E.2d at 873.] While reviewing courts must accept the agency's findings of fact if supported by substantial evidence, no such deference need be accorded an agency's conclusions of law, as the law is the province of the judiciary. *Id*.

*Id*. However, "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel*, 730 N.E.2d at 1257; *State Emps. Appeals Comm'n v. Barclay*, 695 N.E.2d 957, 959-60 (Ind. Ct. App. 1998).

# II. Overview of Relevant Statutory Authority

## A. General Information Relating to Title 7.1

As is stated above, Title 7.1 of the Indiana Code sets forth statutory restrictions relating to the sale of alcohol within the State of Indiana. Title 7.1 applies to the commercial manufacturing, bottling, selling, bartering, importing, transporting, delivering, furnishing, or possessing of alcohol and alcoholic beverages. Ind. Code § 7.1-1-2-2. The following are the general purposes of Title 7.1:

> (1) To protect the economic welfare, health, peace, and morals of the people of this state.
>
> (2) To regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages.
>
> (3) To regulate the sale, possession, and distribution of tobacco products.
>
> (4) To provide for the raising of revenue.

Ind. Code § 7.1-1-1-1.

Title 7.1 differentiates between the available permits for the sale of liquor, beer, and wine. As is stated above, with respect to the sale of wine,[2] Title 7.1 further

---

[2] Wine is defined as "an alcoholic beverage obtained by the fermentation of the natural sugar content of fruit, fruit juice, or other agricultural products containing sugar, including necessary additions to correct defects due to climatic, saccharine, and seasonal conditions, and also the alcoholic fortification of the beverage." Ind. Code § 7.1-1-3-49. "The term includes hard cider, except for alcoholic beverage tax purposes." *Id.* "The term does not mean an alcoholic beverage that contains twenty-one percent (21%), or more, of absolute alcohol reckoned by volume." *Id.*

differentiates between various types of available permits. Title 7.1 creates different farm winery permits, wine wholesalers' permits, wine retailers' permits, wine dealers' permits, and direct wine sellers' permits. Each of these types of permits have different rules and regulations that apply to the specific type of permit. Indiana Code section 7.1-1-2-1 specifically provides that Title 7.1:

> is an exercise of the police powers of the state. The classifications and differentiations made in this title are real and are actually and substantially related to the accomplishment of the purposes of this title. The provisions of this title shall be liberally construed so as to effectuate the purposes of this title.

## B. Statutory Language Relating to Permit Held by Lebamoff

[14] The ATC may issue a liquor dealer's permit to a person,[3] including a package liquor store,[4] who desires to sell liquor to customers for consumption off the licensed premises. Ind. Code §§ 7.1-3-10-1, -4.

---

[3] Indiana Code section 7.1-1-3-31 indicates that the term "person" includes: (1) a natural individual; (2) a firm; (3) a corporation; (4) a partnership; (5) a limited partnership; (6) a limited liability company; (7) an incorporated or unincorporated association; or (8) an other legal entity.

[4] A package liquor store is "a place or establishment that meets the requirements provided in [Indiana Code chapter] 7.1-3-10 [(concerning liquor permits)], and whose exclusive business is the retail sale of alcoholic beverages and commodities that are permissible under this title for use or consumption only off the licensed premises." Ind. Code § 7.1-1-3-28. Indiana Code section 7.1-3-10-5 provides that a package liquor store's exclusive business shall be the selling of the following commodities only:

(1) Liquor in its original package.

A liquor dealer may deliver liquor only in permissible containers to a customer's residence or office in a quantity that does not exceed twelve (12) quarts at any one (1) time. However, a liquor dealer who is licensed under [Indiana Code section] 7.1-3-10-4 may deliver liquor in permissible containers to a customer's residence, office, or designated location. *This delivery may only be performed by the permit holder or an employee who holds an employee permit.* The permit holder shall maintain a written record of each delivery for at least one (1) year that shows the customer's name, location of delivery, and quantity sold.

Ind. Code § 7.1-3-10-7(c) (emphasis added).

## C. Relevant Types of Permits Relating to the Sale of Wine

### *1. Wine Dealer's Permit*

[15] The ATC may issue a wine dealer's permit to a person who desires to sell wine or flavored malt beverages for consumption off the licensed premises. Ind. Code § 7.1-3-15-1. However, "[t]he commission may issue a wine dealer's

---

(2) Beer in permissible containers, if the permittee has the proper permit.
(3) Wine in its original package.
(4) Bar supplies used in the preparation for consumption of alcoholic beverages and in their consumption.
(5) Tobacco products.
(6) Uncooled and uniced charged water, carbonated soda, ginger ale, mineral water, grenadine, and flavoring extracts.
(7) Printed materials.
(8) Lottery tickets as provided in [Indiana Code chapter] 4-30-9.
(9) Cooled or uncooled nonalcoholic malt beverages.
(10) Flavored malt beverage in its original package.

permit only to the following: (a) A person who is the holder of a beer dealer's permit; or, (b) A person who is the holder of a liquor dealer's permit." Ind. Code § 7.1-3-15-2. The holder of a wine dealer's permit "shall be entitled to sell wine for consumption off the licensed premises only and not by the drink." Ind. Code § 7.1-3-15-3(a).

[16] "A wine dealer shall be entitled to sell wine in permissible containers in a quantity of not more than three (3) standard cases, as determined under the rules of the commission, in a single transaction." Ind. Code § 7.1-3-15-3(b). "However, a wine dealer who is licensed under [Indiana Code section] 7.1-3-10-4 may possess wine and sell it at retail in its original package to a customer only for consumption off the licensed premises." *Id*. Furthermore, "a wine dealer who is licensed under [Indiana Code section] 7.1-3-10-4 may deliver wine only in permissible containers to a customer's residence, office, or designated location." Ind. Code § 7.1-3-15-3(c). "This delivery *may only be performed by the permit holder or an employee who holds an employee permit*." *Id*. (emphasis added). "The permit holder shall maintain a written record of each delivery for at least one (1) year that shows the customer's name, location of delivery, and quantity sold." *Id*.

## 2. Direct Wine Seller's Permits

[17] "A person located within Indiana or outside Indiana that wants to sell and ship wine directly to a consumer must be the holder of a direct wine seller's permit and comply with this chapter." Ind. Code § 7.1-3-26-5.

(a) The commission may issue a direct wine seller's permit to an applicant who meets all of the following requirements:

> (1) The applicant is domiciled and has its principal place of business in the United States.
>
> (2) The applicant is engaged in the manufacture of wine.
>
> (3) The applicant holds and acts within the scope of authority of an alcoholic beverage license or permit to manufacture wine that is required:
>
> > (A) in Indiana or the state where the applicant is domiciled; and
> >
> > (B) by the Tax and Trade Bureau of the United States Department of the Treasury.
>
> (4) The applicant qualifies with the secretary of state to do business in Indiana and consents to the personal jurisdiction of the commission and the courts of Indiana.
>
> (5) The applicant files a surety bond with the commission in accordance with [Indiana Code chapter] 7.1-3-1, or deposits cash in an escrow account with the commission, in the amount required of an applicant for a vintner's permit under [Indiana Code section] 7.1-3-1-7.
>
> (6) The applicant:
>
> > (A) has not distributed wine through a wine wholesaler in Indiana within the one hundred twenty (120) days immediately preceding the applicant's application for a direct wine seller's permit and does not distribute wine through a wine wholesaler in Indiana during the term of the direct wine seller's permit; or
> >
> > (B) has operated as a farm winery under [Indiana Code chapter] 7.1-3-12.
>
> (7) The applicant completes documentation regarding the applicant's application required by the commission.

(b) The commission may issue a direct wine seller's permit to an applicant who:

(1) meets the requirements under subsection (a); and

(2) holds a permit issued under this title that allows the sale of an alcoholic beverage at retail.

Ind. Code § 7.1-3-26-7.

A seller may sell and ship wine directly only to a consumer who meets all of the following requirements:

(1) The consumer is at least twenty-one (21) years of age.

(2) The consumer has an Indiana address.

(3) The consumer intends to use wine purchased under this chapter for personal use only and not for resale or other commercial purposes.

(4) Except as provided in subdivision (5), the consumer has provided to the seller in one (1) initial face-to-face transaction at the seller's place of business … all the following:

(A) Name, telephone number, Indiana address, or consumer's Indiana business address.

(B) Proof of age by a state issued driver's license or state issued identification card showing the consumer to be at least twenty-one (21) years of age.

(C) A verified statement, made under penalties for perjury, that the consumer satisfies the requirements of subdivisions (1) through (3).

(5) If:

(A) before April 1, 2006, the consumer has engaged in a transaction with a seller in which the seller sold wine to the consumer and, after April 1, 2006, but before December 31, 2006, the consumer provides the seller with a verified statement, made under penalties for perjury, that the consumer is at least twenty-one (21) years of age; and

(B) the seller provides the name and Indiana address of the consumer to the commission before January 15, 2007;

the seller may sell directly to the consumer in accordance with this chapter.

Ind. Code § 7.1-3-26-6(a).

[19] Accordingly, a direct wine seller's permit allows a seller to sell and ship wine to a consumer by receiving and filling orders that the consumer transmits by electronic or other means if all of the following conditions are satisfied before the sale or by the times set forth as follows:

> (1) The consumer provides the direct wine seller with the following:
>> (A) The verification required by section 6(4) of this chapter in an initial face-to-face transaction.
>>
>> (B) Notwithstanding clause (A), if the consumer provided the information specified in section 6(5)(A) of this chapter after April 1, 2006, but before December 31, 2006, and the seller provides the name and Indiana address of the consumer under section 6(5)(B) of this chapter to the commission before January 15, 2007, the consumer is not required to comply with section 6(4) of this chapter.
>
> (2) The direct wine seller meets the following requirements:
>> (A) Maintains for two (2) years all records of wine sales made under this chapter. If the records are requested by the commission, a direct wine seller shall:
>>> (i) make the records available to the commission during the direct wine seller's regular business hours; or
>>>
>>> (ii) at the direction of the commission, deliver copies to the commission.
>>
>> (B) Stamps, prints, or labels on the outside of the shipping container the following: "CONTAINS WINE. SIGNATURE OF PERSON AGE 21 OR OLDER REQUIRED FOR DELIVERY.".

(C) Causes the wine to be delivered by the holder of a valid carrier's alcoholic beverage permit under [Indiana code chapter] 7.1-3-18.

(D) Directs the carrier to verify that the individual personally receiving the wine shipment is at least twenty-one (21) years of age.

(E) Does not ship to any consumer more than two hundred sixteen (216) liters of wine in any calendar year.

(F) Remits to the department of state revenue monthly all Indiana excise, sales, and use taxes on the shipments made into Indiana by the direct wine seller during the previous month.

(G) Ships to a consumer in Indiana only wine manufactured, produced, or bottled by the applicant.

Ind. Code § 7.1-3-26-9.

[20] A wine shipment purchased under this chapter must be delivered to:

(1) the consumer, who shall take personal delivery of the shipment at the:

(A) consumer's residence;

(B) consumer's business address;

(C) carrier's business address; or

(D) address displayed on the shipping container; or

(2) an individual who is at least twenty-one (21) years of age, who shall take personal delivery of the shipment at the:

(A) consumer's residence;

(B) consumer's business address;

(C) carrier's business address; or

(D) address designated by the consumer and displayed on the shipping container.

Ind. Code § 7.1-3-26-13.

## C. Carrier's and Employee's Permits

### 1. Carrier's Permits

"The commission may issue a carrier's alcoholic permit to a person who is a carrier upon a showing of the reliability and responsibility of the carrier and the propriety of issuing the permit." Ind. Code § 7.1-3-18-1. Indiana Code section 7.1-1-3-8 defines a "carrier" as

> (a) A common carrier, whether licensed under the laws of this state or not;
>
> (b) A person as a proprietor who operates a transportation facility when regularly or casually operating intrastate state or from another state into this state; or,
>
> (c) A person who carries alcoholic beverages for hire or as a free accommodation for a consignor or consignee and who has no permit under this title authorizing him to sell, furnish, give away, manufacture, or rectify alcoholic beverages.

(Footnote omitted).

"A carrier's alcoholic permit shall be required only for, and be applicable to, the movement, conveyance, importation and transportation of alcohol and alcoholic beverages on a public highway in this state." Ind. Code § 7.1-3-18-2. "A carrier's alcoholic permit shall not be required when the conveyance, movement, importation, or transportation is conducted by means of cars or trains operated by a railroad of any type over fixed rails." *Id.* "A carrier shall be required to apply for and obtain a carrier's alcoholic permit before he may

haul, convey, transport, or import alcoholic beverages on a public highway of this state or crossing a boundary of it." Ind. Code § 7.1-3-18-3.

### 2. Employee's Permits

[23] "The commission may issue an employee's permit to a person who desires to act as: (1) a clerk in a package liquor store; (2) an employee who serves wine at a farm winery; or (3) a bartender, waiter, waitress, or manager in a retail establishment, excepting dining car and boat employees." Ind. Code § 7.1-3-18-9(a). "A permit authorized by this section is conditioned upon the compliance by the holder with reasonable rules relating to the permit which the commission may prescribe from time to time." Ind. Code § 7.1-3-18-9(b).

> A person who, for a package liquor store or retail establishment, is:
>> (1) the sole proprietor;
>> (2) a partner, a general partner, or a limited partner in a partnership or limited partnership that owns the business establishment;
>> (3) a member of a limited liability company that owns the business establishment; or
>> (4) a stockholder in a corporation that owns the business establishment;
> is not required to obtain an employee's permit in order to perform any of the acts listed in subsection (a).

Ind. Code § 7.1-3-18-9(d).

## D.  Provisions Relating to the Transportation of Wine

[24] Indiana Code section 7.1-3-1-17 provides that the "traffic and transportation of alcohol and alcoholic beverages for sale within this state shall be subject to the

rules and regulations of the commission." "Alcohol and alcoholic beverages shall be transported and delivered only in containers that are lawful under this title and permissible under the rules and regulations of the commission." *Id.*

It is unlawful for an officer, agent, or employee of a common carrier to recklessly deliver: "(1) an alcoholic beverage to a person other than the person to whom it is consigned; (2) it without a written order by the consignee; or (3) it to a person when the alcoholic beverage has been consigned to a fictitious person or a person under a fictitious name." Ind. Code § 7.1-5-11-4(a). Further, it is unlawful for a person to present or tender for transportation to a carrier or a person acting or assuming to act for a carrier an alcoholic beverage:

> (1) for delivery to a person other than the consignee designated by the person offering the alcoholic beverage for shipment; or
>
> (2) for the purpose of effecting a delivery of the alcoholic beverage to a person not permitted to receive it as consignee:
>
>> (A) under the provisions of this title;
>>
>> (B) under the provisions of a rule of the commission; or
>>
>> (C) because the person is not the bona fide consignee of the shipment.

Ind. Code § 7.1-5-11-8(a).

# III.  Analysis

## A.  The ATC's Interpretation of Indiana Code Section 7.1-3-10-7(c)

The ATC contends that the trial court erred in determining that its interpretation of Indiana Code section 7.1-3-10-7(c) was unreasonable.  In

raising this contention, the ATC argues that the relevant statutory language—which it claims does not allow for wine sold by Lebamoff to be delivered to a customer's residence by a common carrier—is unambiguous and allows for only one reasonable interpretation. For its part, Lebamoff contends that the trial court properly determined that the ATC's interpretation of the relevant statutory language was unreasonable. In raising this contention, Lebamoff argues for a broad interpretation of the meaning of the term "permit holder." Lebamoff also argues that the rules of statutory construction indicate that when Title 7.1 is read together in a harmonious fashion, the only reasonable interpretation would allow Lebamoff to ship wine to a customer's residence via common carrier.

[27] Again, review of Title 7.1 of the Indiana Code clearly demonstrates that the General Assembly has taken great care to differentiate the types of permits available for individuals, partnerships, or corporations that produce and sell alcoholic beverages in Indiana. Each specific type of permit has its own rules and regulations. The fact that some rules and regulations are not commonly applied to all types of permits is evidence that the General Assembly intended to craft specific rules and regulations for each type of permit. Moreover, the language of Title 7.1 makes it clear that the General Assembly knew how to, and in fact did, specifically provide for delivery of wine via common carrier in situations where it intended to allow such delivery. *See e.g.*, Ind. Code § 7.1-3-26-9 (providing that a direct wine seller may ship wine to customers via common carrier if certain requirements are met).

With respect to the delivery of wine by the holder of a liquor dealer's permit, Indiana Code section 7.1-3-10-7(c) specifically provides that a liquor dealer licensed under Indiana Code section 7.1-3-10-4 (the statute dealing with package liquor stores) may deliver liquor in permissible containers to a customer's residence, office, or designated location. However, this delivery "*may only be performed by the permit holder or an employee who holds an employee permit.*" *Id*. (emphasis added). Similarly, Indiana Code section 7.1-3-15-3(c) provides that a wine dealer who is licensed under Indiana Code section 7.1-3-10-4 may deliver wine in permissible containers to a customer's residence, office, or designated location. Like Indiana Code section 7.1-3-10-7(c), Indiana Code section 7.1-3-15-3(c) further provides that "*[t]his delivery may only be performed by the permit holder or an employee who holds an employee permit*." (emphasis added).

In *Lebamoff Enterprises, Inc. et al. v. Huskey*, 666 F.3d 455, 457 (7th Cir. 2012), the United States Court of Appeals for the Seventh Circuit interpreted Indiana Code section 7.1-3-15-3(c) to "forbid liquor stores to use motor carriers [such as UPS or FedEx] to deliver wine (also beer and liquor, Ind. Code §§ 7.1-3-5-3(d), 7.1-3-10-7(c) … )[.]" In discussing Indiana Code section 7.1-3-15-3(c), the Seventh Circuit stated the following:

> Indiana requires drivers employed by liquor retailers to be trained in and tested on Indiana's alcohol laws and also trained in the recognition of phony IDs. *See* Ind. Code §§ 7.1-3-1.5-1, -6, -13, 7.1-3-18-9. It is because the state doesn't require similar training of motor carriers' drivers that those carriers aren't permitted to deliver alcoholic beverages to a consumer unless, prior to shipping, the consumer's age

is personally verified by an employee of the winery from which the consumer is buying. Ind. Code § 7.1-3-26-9(1)(A); *Baude v. Heath*, [538 F.3d 608, 612 (7th Cir. 2008)]. Motor carriers are required to obtain "carriers' alcoholic permits" in order to be allowed to transport alcohol on public highways in Indiana, but their drivers are not required to obtain permits and there is no training requirement either. *See* Ind. Code §§ 7.1-3-18-1 *et seq*. Allowing motor carriers to deliver wine could therefore undermine the state's efforts to prevent underage drinking, the state having decided not unreasonably that requiring face-to-face age verification by someone who has passed a state-certified training course should reduce the prevalence of that drinking.

The fact that Indiana allows direct deliveries by carriers to wine consumers, where the seller has previously verified the consumer's age in person, but not other such deliveries, might seem to undermine the state's rationale, since there is no training requirement for employees of wineries. But the statute imposes other requirements on the wineries designed to assure accurate age verification, *see* Ind. Code § 7.1-3-26-9, and it would hardly be feasible for Indiana (and would indeed be severely discriminatory) to require that employees of out-of-state wineries undergo training in Indiana before being permitted to ship to an Indiana consumer.

We might have a different case if a motor carrier were asking the state to allow it to opt into the same training requirement imposed on drivers employed by retailers of wine. That would both weaken the attempt to justify the challenged law on the basis of the Twenty-First Amendment (which so far as relates to this case merely allows a state to take reasonable measures for preventing underage drinking), and discriminate without apparent justification against motor carriers. But as far as appears, no motor carrier has sought such equal treatment with the retailers or been denied it and sued. No motor carrier is a party to this case.

*Lebamoff*, 666 F.3d at 458-59.  We find the Seventh Circuit's analysis to be persuasive and applicable to the instant matter.[5]

[30]  In addition, we are unpersuaded by Lebamoff's argument that the General Assembly intended for the language of Indiana Code section 7.1-3-10-7(c) to be read in a broad enough fashion to include delivery by a common carrier, even if we assume that the common carrier is acting as an agent of the permit holder. The parties discuss the meaning of the term "permit holder" at length, with Lebamoff arguing that the term is equivalent to the term "permittee" and the ATC arguing for a more narrow construction.  Indiana Code chapter 7.1-1-3 provides definitions that shall be applied throughout Title 7.1 unless the context clearly requires otherwise.  Indiana Code section 7.1-1-3-29 defines the term "permit" as "a written authorization issued by the [ATC] entitling its holder to manufacture, rectify, distribute, transport, sell, or otherwise deal in alcoholic beverages, all as provided in this title."  Indiana Code section 7.1-1-3-30 defines the term "permittee" as:

(a) A person who is the holder of a valid permit under this title; and
(b) Also includes an agent, servant, or employee of, or other person acting on behalf of, a permittee, whenever a permittee is prohibited

---

[5] While we are not bound by the Seventh Circuit's interpretation of the statute at issue, we acknowledge that such interpretation may be considered to be persuasive and careful consideration should be given to such decisions. *See Graves Trucking, Inc. v. Publ. Serv. Comm'n of Ind.*, 490 N.E.2d 365, 370 (Ind. Ct. App. 1986).

from doing a certain act under this title.

Upon reading the above-quoted language, one can reasonably infer that the General Assembly intended for the term "permittee" to be read in a broader fashion than the term "permit holder" because the definition for the term "permittee" explicitly includes not only a permit holder, but also an agent, servant, employee, or other person acting on behalf of the permit holder.

[31] The express language of Indiana Code section 7.1-3-10-7(c) indicates that the General Assembly intended that a home delivery of wine under this section was limited to delivery by the permit holder, *i.e.*, the owner, partner, or manager of the package liquor store, or an employee of the permit holder, so long as the employee holds an employee permit. This language does not appear to allow for delivery of the wine by any other individual who might be acting as an agent for the permit holder. If the General Assembly had intended for Indiana Code section 7.1-3-10-7(c) to allow for home delivery by a common carrier, it could have crafted the language of this section to specifically allow for such delivery as it did in Indiana Code section 7.1-3-26-9. *See* Ind. Code § 7.1-3-26-9 (allowing for home delivery of wine by the holder of a direct wine seller's permit via common carrier). We therefore conclude that the ATC's interpretation of Indiana Code section 7.1-3-10-7(c) was reasonable.[6]

---

[6] Lebamoff also argues that its use of a common carrier to deliver wine was permitted under Indiana Code section 7.1-3-10-7(c) because, under the Uniform Commercial Code ("UCC"), sales contracts are presumed to be "shipment contracts" meaning that delivery is complete when the seller places the product with the shipper. However, we conclude that the general UCC provisions relating to "shipment

# B. Agency Adjudication or
# Improper Attempt at Rulemaking

[32] It is undisputed that "[a]n administrative agency must follow the procedures outlined for it and the law which establishes the agency; an administrative agency can have no more or less power than the statute creating it grants." *Ind. Air Pollution Control Bd. v. City of Richmond*, 457 N.E.2d 204, 206 (Ind. 1983) (citing *Gordon v. Review Bd. of Ind. Emp't Sec.*, 426 N.E.2d 1364 (Ind. Ct. App. 1981)). On appeal, the ATC also contends that the trial court erroneously determined that its order reflected an improper attempt to create an agency rule rather than an administrative adjudication. Conversely, Lebamoff contends that the trial court's determination that the ATC's order reflected an improper attempt to create an agency rule was proper because the ATC failed to follow the necessary procedures for completing its rulemaking function.

[33] Indiana Code section 4-22-2-3(b) defines a "rule" as "the whole or any part of an agency statement of general applicability that: (1) has or is designed to have the effect of law; and (2) implements, interprets, or prescribes: (A) law or policy; or (B) the organization, procedure, or practice requirements of an agency." Indiana Code section 4-22-2-3(c) defines a "rulemaking action" as "the process of formulating or adopting a rule." "The term does not include an agency action." Ind. Code § 4-22-2-3(c). An agency must follow certain procedures

---

contracts" do not apply in the instant matter because application of said provisions would not be harmonious to the general purposes of Title 7.1 or the specific language adopted by the General Assembly relating to the sale, shipment, and delivery of alcohol in Indiana.

when engaging in a rulemaking action.[7] *Villegas v. Silverman*, 832 N.E.2d 598, 608 (Ind. Ct. App. 2005). On the other hand, an administrative adjudication is "the administrative investigation, hearing, and determination of any agency of issues or cases applicable to particular parties." *Blinzinger v. Americana Healthcare Corp.*, 466 N.E.2d 1371, 1374 (Ind. Ct. App. 1984) (internal quotation omitted).

> The rulemaking function is distinguished from the adjudicatory function in that the former embraces an element of generality, operating upon a class of individuals or situations whereas an adjudication operates upon a particular individual or circumstance. In addition, the exercise of administrative rulemaking power looks to the future, whereas an adjudication operates retrospectively upon events which occurred in the past. *Beacon National Life Insurance Co. v. Texas State Board of Insurance* (1979) Tex. Civ. App., 582 S.W.2d 616; *Strumsky v. San Diego Employees Retirement Association* (1974) 11 Cal. 3d 28, 112 Cal. Rptr. 805, 520 P.2d 29.

*Id.* at 1375.

---

[7] These procedures include, among others:

(1) publishing notice of intent to adopt rule (Ind. Code § 4-22-2-23); (2) publishing notice of hearing (Ind. Code § 4-22-2-24); (3) conducting public hearing and allowing comments (Ind. Code § 4-22-2-26); (4) formally adopting the rule (Ind. Code § 4-22-2-29); (5) obtaining approval from the Attorney General (Ind. Code §§ 4-22-2-31, -32); (6) obtaining approval from the Governor (Ind. Code §§ 4-22-2-33, -34); and (7) submitting the rule to the Secretary of State for filing (Ind. Code § 4-22-2-35).

*Villegas*, 832 N.E.2d at 608 n.13.

[34] Upon review, we conclude that the ATC's final order aims to retrospectively determine whether six specific acts that were alleged to have been committed by Lebamoff amounted to violations of the applicable statutory authority. The record demonstrates that the ATC conducted an investigation, collected evidence, and made related findings based off of the information learned during the investigation. In order to make these findings, the ATC was forced to interpret the meaning of Indiana Code section 7.1-3-10-7(c), which it did.

[35] Lebamoff relies on this court's opinion in *Miller Brewing Company v. Bartholemew County Beverage Company, Inc.*, 674 N.E.2d 193 (Ind. Ct. App. 1996), *trans. denied*, in support of its claim that the trial court properly determined that the ATC's final order reflected an improper attempt to create an agency rule without following the applicable rule making procedures. In *Miller Brewing Company*, we were faced with the broad question of whether a change in the price promotion and volume discount allowance reimbursement programs—which provided significantly higher rates of reimbursement for sales completed within a distributor's area of primary responsibility ("APR")—violated Indiana law. Specifically, the parties argued as to whether the changes constituted an unlawful restriction of the sale of beer in violation of 905 IAC 1-28-1 ("Rule 28"). 674 N.E.2d at 197-99. In making their arguments, the parties discussed a prior decision of the IABC, the predecessor to the ATC, which prescribed a twelve percent limit on the inter- and intra-APR price discount differentials. *Id.* at 202. On appeal, we concluded as follows:

> While the IABC labeled its decision in the [prior IABC decision] an "order", the decision exhibited all of the significant characteristics of a "rule". The IABC's decision interprets Rule 28 to prescribe a twelve percent limit on inter- and intra-APR price discount differentials, and is a statement of general and prospective applicability since, as Miller's claim of applicability to this case demonstrates, it potentially operates on all individuals coming within the ambit of Rule 28. As an administrative rule in all but name, its validity depended upon conformance with required rulemaking procedures. The IABC's attempt in [the prior decision] to impose by interpretation a general and prospective rule flies in the face of the requirement that administrative rules be promulgated in conformance with the statutory rulemaking procedures set forth at [Indiana Code section] 4-22-2-3[.]

*Id.*

[36] Unlike the prior decision of the IABC that was discussed in *Miller Brewing Company*, the ATC's interpretation of Indiana Code section 7.1-3-10-7(c) did not operate as a new broad rule going forward, but rather was an interpretation of what we believe to be unambiguous existing statutory language. As we stated above, the interpretation was necessary to retrospectively determine whether the specific alleged violations that were at issue were in fact violations under the law. For this reason, we find our prior decision in *Miller Brewing Company* to be distinguishable from the instant matter.

[37] Further, although Lebamoff argues that the ATC has changed its enforcement of Indiana Code section 7.1-3-10-7(c) and is attempting to promulgate a rule that implements a new interpretation of Indiana Code section 7.1-3-10-7(c), the record is devoid of any evidence that the ATC has actually changed its enforcement of this section. Lebamoff attempts to support this argument by its claim that it has been shipping wine to customer's residence via common

carrier for approximately thirty years. In issuing its final order, however, the ATC indicated that while Lebamoff may have been using this method to ship wine to customer's residences, the ATC was not aware of Lebamoff's practice in this regard until it became aware of the six violations of Indiana Code section 7.1-3-10-7(c) that are at issue in the instant appeal. Because Lebamoff has failed to provide evidence that the interpretation of Indiana Code section 7.1-3-10-7(c) represents a change in policy, we conclude that the ATC's act of interpreting this statute did not amount to an improper attempt to promulgate an agency rule.

## Conclusion

[38]  Applying only the provisions relating to a liquor dealer's permit, we conclude that the ATC's interpretation of the relevant statutory authority was reasonable. We further conclude that the ATC's order did not reflect an improper attempt to create an agency rule, but rather was a proper exercise of the ATC's adjudicatory function. As such, we reinstate and affirm the ATC's final order.

[39]  The judgment of the trial court is reversed and the matter remanded to the trial court with instructions.

Najam, J., and Mathias, J., concur.